[No. B125401. Second Dist., Div. Three. Aug. 30, 2000.]

BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, Plaintiff and Respondent, v.
ROBERT R. HENSLER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.B and C.

**COUNSEL**

Law Offices of Mark A. Schadrack and Mark A. Schadrack for Defendant and Appellant.

Dolle and Dolle, Hodge L. Dolle, Jr., and Lawrence H. Thompson for Plaintiff and Respondent.

**OPINION**

**KITCHING, J.—**

I

INTRODUCTION

Defendant property owner appeals a judgment in condemnation in favor of plaintiff, a joint powers authority formed to own and operate the Burbank

Airport. This appeal addresses the issue of whether individual cities can delegate their eminent domain powers to a joint powers agency, and whether, under the circumstances of this appeal, three joint powers cities did delegate their eminent domain powers to a joint powers agency. We conclude that the joint powers cities can, and through a joint powers agreement did, delegate their eminent domain power to a joint powers agency. In the unpublished part of this appeal, we decide other issues. We conclude that the judgment for plaintiff must be affirmed.

II

FACTUAL AND PROCEDURAL HISTORY

After it opened in 1930, the Burbank Airport was privately owned and operated until the early 1970's, when its then owner, Lockheed Aircraft Corporation, disclosed that it was considering selling the airport. Nearby cities entered into a "Joint Powers Agreement" in June 1976 to evaluate transfer of the airport to public ownership and operation. The joint powers cities obtained State of California legislation authorizing the sale of revenue bonds to purchase the airport. In June 1977, the city councils of Burbank, Glendale, and Pasadena voted to form an airport authority to acquire and operate the Burbank Airport. The joint powers cities completed studies, obtained legislation, secured federal funding, and then purchased the airport from Lockheed on June 28, 1978.

The Joint Powers Agreement was amended several times, most recently on September 15, 1991, producing the agreement now in effect. The 1991 Joint Powers Agreement created an agency known as the Burbank-Glendale-Pasadena Airport Authority (the Airport Authority). Each joint powers city appoints three commissioners to the nine-member commission that governs the Airport Authority.

Since 1949, Robert R. Hensler has owned and operated his construction business from a 61,119-square-foot property next to the Burbank Airport's western boundary. Hensler's property, 7550 Wheatland Avenue, lies within the City of Los Angeles. The property is zoned for commercial use.

In 1985, the Airport Authority approved a negative declaration for an extension of taxiway B, which serves north-south runway 15/33. Then-existing taxiway B paralleled runway 15/33 but did not extend fully to the runway's north end, ending about 350 feet south of Hensler's property.

In a September 18, 1989, resolution, the Airport Authority Commission declared the necessity of condemning Hensler's property, part of which lay

in the path of the proposed taxiway extension and proposed service road. The Airport Authority filed a complaint in eminent domain against Hensler to take the whole parcel. Hensler's answer asserted the affirmative defense that the Airport Authority had not complied with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), and Hensler's cross-complaint sought a writ of mandate for CEQA violations. The trial court granted Hensler's motion for peremptory writ of mandate and dismissed the eminent domain action. The Airport Authority appealed. *Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577 [284 Cal.Rptr. 498], issued September 28, 1995, concluded that the project which was the subject of the 1985 negative declaration was a substantially different project than the one forming the basis of the 1989 resolution of necessity, and that the Airport Authority did not comply with CEQA in adopting the latter resolution of necessity. (*Id.* at p. 594.) Division Seven of this court therefore affirmed dismissal of the eminent domain action. (*Id.* at p. 596.)

On March 25, 1993, the Airport Authority approved a negative declaration for a project to acquire the eastern 23 percent of Hensler's property. On July 19, 1993, the Airport Authority adopted a resolution of necessity to acquire this part of Hensler's property "for the purpose of relocating and realigning the existing jagged path of a service road . . . west of Taxiway B and establishing a safety and buffer zone . . . west of the relocated and realigned service road." The resolution of necessity authorized initiation of a condemnation proceeding in superior court. On August 16, 1993, the Airport Authority filed its complaint in eminent domain to acquire 13,838 square feet of Hensler's property.

Hensler answered and filed a cross-complaint for writ of mandate, declaratory relief, and a permanent injunction. Hensler's motion for petition of writ of mandate sought to invalidate the Airport Authority's negative declaration because (1) the Airport Authority did not give notice to Hensler or provide him with an opportunity to comment on the negative declaration, and (2) the negative declaration ignored the fact that condemnation of the Hensler parcel was a small part of a larger project whose environmental impacts the negative declaration did not assess. After the trial court denied the petition, Hensler appealed. In *Burbank-Glendale-Pasadena Airport Authority v. Hensler* (B083154), issued September 28, 1995 in a nonpublished opinion, this court found that the Airport Authority failed to provide Hensler with individual notice of preparation of the negative declaration and an opportunity to be heard before the Airport Authority adopted the negative declaration, and granted Hensler's petition for mandamus. The decision,

however, did not dismiss the Airport Authority's eminent domain action. It granted Hensler's petition and remanded the matter to the trial court with directions to order the vacating of the adoption of the negative declaration and to order reconsideration of the negative declaration in a new hearing as to which Hensler would receive specific notice and in which Hensler would have an opportunity to appear.

In April 1996, upon reconsideration, and after giving Hensler personal notice and an opportunity to be heard at a public meeting before the Airport Authority's decision, the Airport Authority again adopted a negative declaration and approved condemnation of the Hensler property.

In August 1996, the court conducted a trial on three legal issues.

First, did the Airport Authority have the power of condemnation? The trial court concluded that the Airport Authority had the power of condemnation. Government Code section 37350.5 granted cities a general power of eminent domain, and Government Code section 50470 specifically granted the power to condemn property for an airport. Government Code section 6502 authorized two or more cities by agreement to exercise jointly any powers common to the contracting parties, and the 1991 Joint Powers Agreement stated that pursuant to these statutes, the Airport Authority was authorized to exercise eminent domain power.

Second, did Hensler waive his right to challenge the necessity of condemnation? The trial court found that Hensler received notice of the July 19, 1993, hearing on the necessity of condemnation and through his attorney advised that he would attend, but failed to do so. Based on *People ex rel. Dept. of Transportation v. Cole* (1992) 7 Cal.App.4th 1281, 1286 [9 Cal.Rptr.2d 750], the court concluded that Hensler had waived the right to challenge the necessity of the taking.

Third, was there a necessity to condemn some or all of Hensler's property? The trial court concluded that Hensler's waiver made it unnecessary to review the Airport Authority's determination that necessity existed. A separate jury trial would take up the question of valuation of Hensler's property.

The parties' pretrial stipulation that $352,000 was just compensation for Hensler's property made trial of the valuation issue unnecessary. A judgment in condemnation was filed May 20, 1998. Notice of entry of judgment was filed July 2, 1998.

Hensler moved for a new trial and for an order setting aside the judgment and for entry of a new judgment in his favor. The trial court denied the motions and Hensler filed a timely notice of appeal.

## III

### ISSUE

The published portion of this appeal addresses Hensler's claim that the Airport Authority lacks the power of eminent domain.

## IV

### DISCUSSION

#### A. *The Airport Authority Has the Power of Eminent Domain*

Hensler claims that the Airport Authority lacks the power of eminent domain. Although conceding that the cities had the right to form a joint powers agency, he argues that the cities did not have the power to transfer their eminent domain power to that joint powers agency. Hensler also attempts to draw a distinction between a joint exercise of the eminent domain power by elected officials, and a transfer of that power to an entity, such as a joint powers agency, that is not publicly accountable. He also argues that no statutes expressly give the Airport Authority the eminent domain power, and that the Airport cannot grant the power of eminent domain to itself.

##### (1) *The Joint Powers Cities Have, and May Delegate, the Eminent Domain Power*

■ The power of eminent domain arises as an inherent attribute of sovereignty that is necessary for government to exist. Properly exercised, the eminent domain power effects a compromise between the public good for which private land is taken, and the protection and indemnification of private citizens whose property is taken to advance that public good. The Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and California Constitution, article I, section 19 require this protection of private citizens' property. (*City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60, 64 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208].)

These constitutional provisions restrain the power to condemn in two ways: by requiring (1) a "public use" and (2) payment of "just compensation" for property taken. Despite the broad eminent domain powers of federal and state governments, a municipal corporation can exercise eminent domain power only when expressly authorized by law. (*City of Oakland v.*

*Oakland Raiders, supra*, 32 Cal.3d at p. 64; Code Civ. Proc., § 1240.020.) "Statutory language defining eminent domain powers is strictly construed and any reasonable doubt concerning the existence of the power is resolved against the entity." (*Kenneth Mebane Ranches v. Superior Court* (1992) 10 Cal.App.4th 276, 282-283 [12 Cal.Rptr.2d 562].)

Government Code section 37350.5 grants a broad eminent domain power to a city: "A city may acquire by eminent domain any property necessary to carry out any of its powers or functions." Another Government Code statute, section 50470, specifically grants a city (defined as a "local agency" in Gov. Code, § 50230, subd. (a)) the power to acquire property by condemnation for use as an airport.[1] Code of Civil Procedure section 1240.125 also specifically authorizes a local public entity to "acquire property by eminent domain outside its territorial limits for . . . airports . . . if it is authorized to acquire property by eminent domain for the purposes for which the property is to be acquired."

Government Code section 6502 authorizes cities, acting together, to exercise their eminent domain powers jointly. Government Code section 6502 states, in relevant part: "If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise any power common to the contracting parties . . . . [¶] It shall not be necessary that any power common to the contracting parties be exercisable by each such contracting party with respect to the geographical area in which such power is to be jointly exercised." Government Code section 6500 defines cities as public agencies.

The predecessor statute to Government Code section 6502 originally granted no new powers and merely created a new procedure for public agencies, such as cities, to exercise their existing powers jointly. (*The City of Oakland v. Williams* (1940) 15 Cal.2d 542, 549 [103 P.2d 168]; Stats. 1921, ch. 363, p. 542.) The Legislature later enacted statutes allowing contracting parties—local governmental entities entering into a joint powers agreement—to create a separate joint powers agency "to exercise on their behalf powers they hold in common." (*Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1050 [77 Cal.Rptr.2d 189, 959 P.2d 347]; Stats. 1947, ch. 1045, pp. 2446-2447; Stats. 1949, ch. 84, § 1, pp. 329-330, adding Gov. Code, §§ 6500-6512.)

---

[1]Government Code section 50470 states in part: "Whether governed under general laws or charter, a local agency may acquire property by purchase, condemnation, donation, lease, or otherwise for the purposes of this article and may use any real property which it owns or acquires within or without its limits as a site for an airport."

Thus pursuant to Government Code section 6506, the agency administering or executing a joint powers agreement may be either (1) a party to the agreement, or (2) or a public agency or other entity constituted pursuant to or designated by the agreement.[2] In the latter case, as Government Code section 6507 states, "the agency is a public entity separate from the parties to the agreement." Government Code section 6508 authorizes that separate public entity to acquire property and to sue and be sued in its own name.[3]

Pursuant to Government Code section 6502, *The City of Oakland v. Williams, supra,* 15 Cal.2d at page 549, and *Rider v. City of San Diego, supra,* 18 Cal.4th at page 1050, cities as contracting parties—the local governmental entities entering into a joint powers agreement—can create a separate joint powers agency "to exercise on their behalf powers they hold in common." (*Rider,* at p. 1050.) Thus cities can create a joint powers agency and delegate some of their powers to it.[4] In this appeal, we conclude that the Airport Authority derives the power of eminent domain from the three joint power cities.

(2) *The Parties Delegated Their Eminent Domain Power to the Airport Authority Through the Joint Powers Agreement*

The Airport Authority exists pursuant to a joint powers agreement to which three cities are parties. The next question is whether the three joint power cities delegated the power of eminent domain to the Airport Authority. We conclude that they did.

The 1991 Joint Powers Agreement stated that the parties to the agreement—the Cities of Burbank, Glendale, and Pasadena—entered into a joint powers agreement on June 14, 1977, for the purpose of acquiring, operating,

---

[2]Government Code section 6506 states, in relevant part: "The agency or entity provided by the agreement to administer or execute the agreement may be one or more of the parties to the agreement or a commission or board constituted pursuant to the agreement or a person, firm, or corporation, including a nonprofit corporation, designated in the agreement."

[3]The first paragraph of Government Code section 6508 states, in relevant part: "The agency shall possess the common power specified in the agreement and may exercise it in the manner or according to the method provided in the agreement. If the agency is not one or more of the parties to the agreement but is a public entity, commission or board constituted pursuant to the agreement and such agency is authorized, in its own name, to do any or all of the following: to make and enter contracts, or to employ agents and employees, or to acquire, construct, manage, maintain or operate any building, works or improvements, or to acquire, hold or dispose of property or to incur debts, liabilities or obligations, said agency shall have the power to sue and be sued in its own name."

[4]The California Legislature also granted important powers directly to the Airport Authority. Government Code section 6546.1 authorizes the Airport Authority to issue revenue bonds for designated purposes at the Burbank Airport.

repairing, maintaining, improving, and administering the Burbank Airport. The agreement stated that it was made pursuant to the provisions of article 1, chapter 5, division 7, title 1 of the Government Code (Gov. Code, § 6500 et seq.), and declared that the parties had created a public entity, the Airport Authority, that was separate and apart from the parties. The agreement stated: "Each of the [p]arties has the powers necessary to accomplish the purposes of this Agreement. The foregoing purposes will be accomplished and the common powers exercised in the manner hereinafter set forth."

In a section captioned "Powers and Duties of the Authority," the Joint Powers Agreement enumerated "powers common to the parties" and powers that the Airport Authority would have pursuant to the authorizing provisions of the Government Code. It further stated: "The Authority is authorized to do all acts necessary or convenient to the exercise of the aforementioned powers, including, but not limited to, the following: . . . to acquire real or personal property, including, without limitation, by purchase, lease, gift, bequest, devise, *or exercise of the power of eminent domain* pursuant to California Government Code Sections 6502, 37350.5 and 50470 (other than by the purchase of fee title to condemned real property zoned for residential use as of March 24, 1978) . . . ." (Italics added.)

The Joint Powers Agreement stated: "[I]t is intended that the Authority will proceed to do all acts necessary or desirable to accomplish the purposes of this Agreement. Such acts may, but need not necessarily include all or part of the following: [¶] . . . [¶] (g) Conducting any necessary or desirable studies to determine whether any development, repair, improvement, renovation or reconfiguration, of the Airport Facility should be undertaken and causing any such development, repair, improvement, renovation or reconfiguration and any acquisition of property by purchase, lease, gift, bequest, devise or *exercise of the power of eminent domain* pursuant to California Government Code Sections 6502, 37350.5 and 50470 . . . ." (Italics added.)

The Cities of Burbank, Glendale, and Pasadena individually have the power to acquire property for an airport by exercising their eminent domain powers; have the ability to delegate those powers to a joint authority, such as the Airport Authority; and did delegate their eminent domain power to the Airport Authority through the Joint Powers Agreement. Therefore the Airport Authority has the power to condemn property.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### DISPOSITION

The judgment is affirmed. The court orders the parties to bear their own cost on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied September 22, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 13, 2000.

---

*See footnote, *ante*, page 556.