[No. D045506. Fourth Dist., Div. One. Nov. 22, 2005.]

MELVIN SHAPIRO, Plaintiff and Appellant, v.
BOARD OF DIRECTORS OF THE CENTRE CITY DEVELOPMENT
CORPORATION et al., Defendants and Respondents.

COUNSEL

Charles Wolfinger for Plaintiff and Appellant.

Lounsbery, Ferguson, Altona & Peak, Helen Holmes Peak and Judith Hartwig for Defendant and Respondent Board of Directors of Centre City Development Corporation.

Michael J. Aguirre, City Attorney, Claudia Gacitua Silva and David J. Karlin, Deputy City Attorneys, for Defendant and Respondent San Diego City Council.

OPINION

**IRION, J.**—In this appeal, we examine whether Centre City Development Corporation (CCDC)—a nonprofit corporation created by the City of San Diego—may hold closed-session meetings with legal counsel for the Redevelopment Agency of the City of San Diego (the Agency) to assist the Agency with its eminent domain litigation. Seeking declaratory, injunctive and mandamus relief, plaintiff Melvin Shapiro alleges that defendant CCDC's Board of Directors (CCDC Board) must meet in open session with the Agency's legal counsel pursuant to the Ralph M. Brown Act (Brown Act) (Gov. Code, § 54950 et seq.).[1] Shapiro argues that because CCDC is not a party to the Agency's eminent domain litigation, the CCDC Board may not rely on section 54956.9 of the Brown Act, which permits the legislative body of a local agency to hold closed-session meetings with its legal counsel to discuss litigation to which it is a party.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

The trial court ruled against Shapiro, concluding that the CCDC acts on behalf of the Agency with respect to the eminent domain litigation and thus may meet in closed session with the Agency's counsel under the closed-session rules applicable to the Agency.

We disagree with the trial court's interpretation of the Brown Act. We are required by case law to narrowly construe the Brown Act's open meeting exceptions, and the text of section 54956.9 makes clear that the Legislature intended to abrogate all attorney-client privilege principles applicable to meetings required to be held in open session under the Brown Act, except as expressly permitted by section 54956.9. Finding no express authorization for the CCDC Board to meet in closed session with legal counsel for the Agency in the text of section 54956.9, we conclude that such closed-session meetings are not permitted by the Brown Act. Although defendants present legitimate policy arguments for allowing closed-session meetings when one local agency delegates certain litigation-related tasks to another local agency, such arguments must be addressed to the Legislature, not this court. Accordingly, we reverse the trial court's judgment denying the relief sought by Shapiro and instruct the trial court to order declaratory and mandamus relief against the CCDC Board's practice of meeting in closed session with legal counsel for the Agency regarding the Agency's eminent domain litigation.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

## A

### History of the Agency and CCDC

The City of San Diego (the City) created the Agency in 1958 and designated the City Council as the Agency's governing body.[2] In 1975 the City created the nonprofit CCDC to provide various redevelopment services to the Agency.[3] The City is the sole member of the CCDC and appoints the CCDC Board.

---

[2] The City has filed a motion requesting that we take judicial notice of a certified copy of City Council Resolution No. 147378 that created the Agency in 1958. We hereby grant the request.

[3] CCDC's articles of incorporation state: "The specific and primary purpose for which this corporation is formed is to provide redevelopment services . . . by contract with the Redevelopment Agency of the City of San Diego." The articles of incorporation enumerate certain services to be provided by the CCDC, such as "[e]ffectuation of the general Centre City Plan and policies adopted by the Redevelopment Agency and the San Diego City Council" and "[n]egotiations and subsequent recommendations to the Redevelopment Agency with regard to property ownership, development, and financial activity within redevelopment project areas."

The "Redevelopment Plan for the Centre City Redevelopment Project" (Redevelopment Plan), which covers much of downtown San Diego, was adopted by the City Council in 1992.[4] CCDC and the Agency are parties to an operating agreement which states that CCDC will "provide general management and other staff services for Agency" with respect to the redevelopment projects in the Centre City area. Those services include "overall executive direction" for the Centre City redevelopment. The operating agreement makes clear that the CCDC is under the supervision of the Agency, stating that "[i]n the performance of its duties hereunder, [CCDC] shall be under the direction of Agency, and shall abide by actions taken, directives given, and policies adopted with respect to the [Centre City redevelopment] by Agency."[5]

## B

### *The Role of CCDC and the Agency in Eminent Domain Proceedings*

 This appeal arises out of the Agency's and CCDC's role in eminent domain proceedings. The Community Redevelopment Law (Health & Saf. Code, § 33000 et seq. (CRL)) provides the statutory authority for the Agency to exercise powers of eminent domain. The CRL states that, for the purposes of redevelopment, a redevelopment agency may "[a]cquire real property by eminent domain." (Health & Saf. Code, §§ 33391, subd. (b), 33003 [defining "agency"].)[6] Accordingly, "[r]edevelopment plans may provide for the agency

---

[4] The Redevelopment Plan was adopted in 1992, expressly giving the Agency the power of eminent domain for 12 years, in accordance with Health and Safety Code section 33333.2, subdivision (a)(4), which imposes "[a] time limit, not to exceed 12 years from the adoption of the redevelopment plan, for commencement of eminent domain proceedings . . . ." In April 2004 the City Council amended the Redevelopment Plan to make the eminent domain authority applicable for another 12 years.

[5] CCDC also submitted a declaration by its manager of contracting and public works stating that CCDC acts as an agent for the Agency.

[6] A local agency may take property by eminent domain only if authorized by statute. Code of Civil Procedure section 1240.020 states that "[t]he power of eminent domain may be exercised to acquire property for a particular use *only by a person authorized by statute* to exercise the power of eminent domain to acquire such property for that use." (Italics added.) Similarly, a complaint to acquire property in eminent domain must contain "[a] reference to the statute that authorizes the plaintiff to acquire the property by eminent domain." (Code. Civ. Proc., § 1250.310, subd. (d)(3).) Further, because the federal and state Constitutions require "protection of private citizens' property," there are several important restraints on the power to condemn, including that " '[s]tatutory language defining eminent domain powers is strictly construed and any reasonable doubt concerning the existence of the power is resolved against the entity.' " (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (2000) 83 Cal.App.4th 556, 561–562 [99 Cal.Rptr.2d 729].)

to acquire by . . . condemnation all or part of the real property in the project area." (Health & Saf. Code, § 33342.) Here, the Redevelopment Plan authorizes the Agency to acquire property through eminent domain.[7]

■ California's Eminent Domain Law (Code Civ. Proc., § 1230.010 et seq.) requires that the Agency fulfill certain procedural requirements in exercising its eminent domain authority. Before filing an eminent domain action, the City Council, as the legislative body of the Agency, must hold a public hearing to determine whether to adopt a resolution of necessity for acquisition of property by eminent domain. (See Code Civ. Proc., §§ 1245.235, 1240.040, 1245.220.) After adopting a resolution of necessity, the Agency must file a lawsuit to institute the eminent domain litigation. (See Code Civ. Proc., § 1250.110.) The Agency (with the City Council as its legislative body) performs these tasks itself, and does not delegate them to CCDC.

Although the Agency holds the hearings to determine whether to adopt a resolution of necessity and files the eminent domain lawsuits in its name, it delegates other tasks relevant to land acquisition and eminent domain proceedings for the Centre City redevelopment to CCDC. Specifically relevant to eminent domain litigation, CCDC's responsibilities under the operating agreement are to (1) "[c]oordinate the real estate acquisition process necessary to execute the [Centre City redevelopment], including . . . obtaining approvals of acquisition prices, if required, from Agency; provided, however, that [CCDC] shall not . . . conduct condemnation actions"; and (2) "[c]oordinate and utilize other services provided . . . by consultants selected by and under separate contract with the City or Agency, . . . including . . . legal opinions and documentation."

---

[7] The parties do not identify any statute that would authorize CCDC to acquire property by eminent domain or to participate as a plaintiff in an eminent domain action. It is also clear that the CCDC is not authorized by the Agency to exercise the power of eminent domain, as its operating agreement with the Agency states that CCDC "shall not . . . conduct condemnation actions." Had the Agency attempted such delegation, it would in any event be invalid without specific statutory authorization. (See *City of Sierra Madre v. Superior Court* (1961) 191 Cal.App.2d 587, 590 [12 Cal.Rptr. 836] [city has no inherent authority to delegate eminent domain powers]; *Burbank-Glendale-Pasadena Airport Authority v. Hensler, supra,* 83 Cal.App.4th at pp. 561–562 [delegation by three cities of their eminent domain powers to airport authority was permissible because it was authorized by a joint powers agreement, and § 6502, as amended, allows local agencies to enter into joint powers agreements, to create a separate joint powers agency " 'to exercise on their behalf powers they hold in common' "].)

The CCDC is given an annual budget by the Agency for the acquisition of real property on behalf of the Agency. CCDC is responsible for obtaining an appraisal of each property and conducting negotiations with the property owners regarding compensation for loss of the condemned property. As trial of each eminent domain lawsuit approaches, CCDC, acting as the Agency's representative, will make a final good faith offer to the property owner. Any settlement is subject to the CCDC Board's finding that the settlement is within the budget allocated by the Agency for the acquisition of real property and is not a "gift of public funds." CCDC estimates that 90 percent of Agency's eminent domain lawsuits are resolved through settlement.

In connection with its role in approving the settlement of eminent domain litigation, the CCDC Board confers with an outside law firm hired by the Agency to litigate the eminent domain lawsuits. The publicly posted agendas announcing these meetings note that they will take place in closed session pursuant to section 54956.9 and indicate the specific eminent domain lawsuits that are to be discussed. After the meetings, the CCDC publishes minutes, which typically indicate that the CCDC Board received a report from special counsel for the Agency in closed session regarding the litigation, and on occasion, that the CCDC Board has given direction regarding a potential settlement.

C

*Shapiro's Brown Act Claims Against the Agency and CCDC*

Shapiro, who is a resident of San Diego, filed a complaint for declaratory, injunctive and mandamus relief against the CCDC Board and the City Council acting as the governing body of the Agency.[8] Shapiro alleges that the CCDC Board and the Agency violate the open meeting requirements of the Brown Act when the CCDC Board meets in closed session with legal counsel for the Agency to discuss pending eminent domain litigation.[9] Although section 54956.9, subdivision (a), contains an exception which permits a legislative body to meet with its legal counsel in closed session when it is a

---

[8] Shapiro filed suit pursuant to section 54960, subdivision (a), which provides that "any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations" of the Brown Act. (See also *McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1312 [2 Cal.Rptr.3d 774] [a citizen of the State of California is an " 'interested person' " within the meaning of § 54960].)

[9] Although the CCDC Board is the entity that holds the closed-session meetings, Shapiro sued the Agency as well, asserting that "[t]he Agency's actions in authorizing its counsel and CCDC to meet in closed sessions on the suits instead of holding them itself, also violate subdivision (a) [of section 54956.9]." Logically, the Agency also would be subject to whatever injunctive, declaratory or mandamus relief prohibits the Agency's counsel from meeting with CCDC in closed session.

party to a litigation, Shapiro contends that because CCDC is not a party to the eminent domain litigation, the CCDC Board must meet with the Agency's legal counsel in open session.[10]

Shapiro filed a motion seeking a writ of mandate or a prohibitory injunction and declaratory relief. Based on briefing, declarations and attached documents submitted by the parties, the trial court ruled against Shapiro, holding: "Plaintiff's interpretation of this exception as narrowly limited to parties actually named in a lawsuit is not persuasive. Here, CCDC plays an important role in the City's redevelopment projects and the Agency may delegate the evaluation of the eminent domain issues to CCDC for purposes of ensuring that the overall aspects of the redevelopment plan are consistently applied."

Shapiro appeals, framing the central issue as follows: "Does section 54956.9, subdivision (a) prohibit CCDC from holding a closed session with the Agency's counsel on eminent domain suits when it is not named as a party in the litigation?"[11]

II

DISCUSSION

A

*Standard of Review*

■ We apply a de novo standard of review where, as here, our task consists of applying a statute to underlying facts that are not in dispute. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917 [117 Cal.Rptr.2d 631] (*Shapiro*).) To the extent that the trial court drew factual

---

[10] Shapiro's complaint also sought relief for alleged violations of the Brown Act's agenda-posting requirements. The trial court granted some of the requested relief. The agenda-posting requirements are not an issue in this appeal.

[11] In his briefing on appeal Shapiro also questions whether section 54956.9, subdivision (a), and the CRL (Health & Saf. Code, § 33121.5) "prohibit the Agency from delegating its right to hold such closed sessions to make final decisions on eminent domain suits to CCDC." Shapiro did not assert the CRL as a basis for relief in his complaint and did not in his complaint ask the trial court to determine that the Agency violated the CRL by delegating certain decision-making to CCDC. Accordingly, we decline to reach the issue here. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844 [30 Cal.Rptr.2d 697] [" 'As a general rule an appellate court will consider only such points as were raised in the trial court, and this rule precludes a party from asserting, on appeal, claims to relief not asserted or asked for in the court below' "].)

inferences, we defer to those inferences to the extent they are supported by substantial evidence in the record. (*Id.* at p. 918.)

B

*The Brown Act*

The Brown Act requires that, except as otherwise provided, "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency . . . ." (§ 54953, subd. (a).)[12] "The Brown Act was designed to facilitate public participation in local governmental decisions and to curb misuse of the democratic process by secret legislation." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 681 [98 Cal.Rptr.2d 263].) The statute expressly declares legislative intent that the actions of local agencies "be taken openly and that their deliberations be conducted openly," and states that "[t]he people . . . do not give their public servants the right to decide what is good for the people to know and what is not good for them to know." (§ 54950.)

The parties do not dispute, and we agree, that both the San Diego City Council (acting as the governing body for the Agency) and the CCDC Board are legislative bodies of local agencies and are subject to the Brown Act. (§ 54952.)

At issue is section 54956.9, which creates an exception to the Brown Act's open meeting requirements for meetings with legal counsel regarding pending litigation. Section 54956.9 allows "a legislative body of a local agency" to hold "a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation."[13] As relevant here, section 54956.9 further defines the pending

---

[12] Similarly, section 54962 of the Brown Act states: "Except as expressly authorized by this chapter [and other enumerated provisions], no closed session may be held by any legislative body of any local agency."

[13] Section 54956.9 explicitly identifies eminent domain lawsuits as one type of litigation falling within its scope. It has been observed that there are good reasons for allowing a local agency to hold a closed session to discuss settlement strategy for eminent domain litigation. " 'No purchase would ever be made for less than the maximum amount the public body would pay if the public (including the seller) could attend the session at which that maximum was set . . . .' " (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 331 [87 Cal.Rptr.2d 813]; see also *Shapiro, supra,* 96 Cal.App.4th at p. 914 [citing *Kleitman*].)

litigation exception as follows: "For purposes of this section, litigation shall be considered pending when" "[l]itigation, to which the local agency is a party, has been initiated formally." (*Id.* at subd. (a).)

Central to the issues presented here, section 54956.9 establishes that the general rules of attorney-client privilege are *irrelevant* in deciding whether meetings by the governing board of a local agency may be held in closed session. According to a provision added to section 54956.9 in 1987 (the 1987 amendment): "For purposes of this chapter, all expressions of the lawyer-client privilege other than those provided in this section are hereby abrogated. This section is the exclusive expression of the lawyer-client privilege for purposes of conducting closed-session meetings pursuant to this chapter." (Stats. 1987, ch. 1320, § 5, p. 4765.) Thus, by statute, generally applicable principles of attorney-client privilege cannot provide the answer to the question before us. Instead, we must look to the text of section 54956.9.

C

*The Text of Section 54956.9 Does Not Expressly Authorize CCDC to Meet in Closed Session with Legal Counsel for the Agency*

■ Our analysis of section 54956.9 presents a question of statutory interpretation, and we approach this task mindful that "[t]he function of the court in construing a statute 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . .' " (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 492 [66 Cal.Rptr.2d 304, 940 P.2d 891].) If the language is clear and unambiguous, the plain meaning of the statute governs, and that meaning must be applied according to its terms. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) "If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Ibid.*) ■ Highly relevant to our interpretation here is the rule that "[s]tatutory exceptions authorizing closed sessions of legislative bodies are construed narrowly and the Brown Act

'sunshine law' is construed liberally in favor of openness in conducting public business." (*Shapiro, supra,* 96 Cal.App.4th at p. 917; see also *Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 869 [104 Cal.Rptr.2d 857] ["the Brown Act is a remedial statute that must be construed liberally so as to accomplish its purpose"].)[14]

### 1. *The Plain Language of Section 54956.9*

Shapiro argues that the Brown Act's pending litigation exception does not allow the CCDC Board to meet in closed session with the Agency's legal counsel because the meetings are not held to discuss "pending litigation" as that term in defined in section 54956.9. Shapiro points out that "pending litigation" is defined by the statute as that "to which *the local agency is a party*" (§ 54956.9, subd. (a), italics added), and CCDC is not and could not be a party to the eminent domain litigation. (See Code Civ. Proc., § 1240.020; Health & Saf. Code, § 33391, subd. (b).) Shapiro argues that the Brown Act therefore does not authorize the CCDC Board to meet in closed session with the Agency's eminent domain counsel. CCDC and the Agency disagree. They contend that because the CCDC Board acts as an *agent* of the Agency, it has the same right as the Agency to discuss eminent domain litigation with counsel in closed session.

█ As an initial observation, we note that if general attorney-client privilege rules applied, defendants' focus on CCDC as an "agent" of the Agency might have some dispositive relevance. The attorney-client privilege

---

[14] To support his argument for narrowly interpreting section 54956.9, Shapiro cites the language recently added to the California Constitution by the passage of Proposition 59 in the November 2, 2004 General Election. According to that language, "[a] statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. . . ." (Cal. Const., art. I, § 3, subd. (b), par. (2); Sen. Const. Amend. No. 1 (2003–2004 Reg. Sess.) res. ch. 1 [No. 2 West's Cal. Legis. Service, p. A-1].) This citation does not materially contribute to our statutory analysis of section 54956.9 for two reasons. First, the language added by Proposition 59 is inapplicable here in that it states: "This subdivision does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records or meetings of public bodies that is in effect on the effective date of this subdivision . . . ." (Cal. Const., art. I, § 3, subd. (b), par. (5); Sen. Const. Amend. No. 1 (2003–2004 Reg. Sess.) res. ch. 1 [No. 2 West's Cal. Legis. Service, p. A-2].) Section 54956.9 falls under this savings clause because it is a *preexisting* statutory exception to the right of access to meetings of public bodies. Second, even if the language added by Proposition 59 did apply, it would merely be duplicative of the already-established principle that exceptions to the Brown Act are to be narrowly construed (*Shapiro, supra,* 96 Cal.App.4th at p. 917), and thus it would not substantively add to the principles guiding our analysis.

treats communication between a *lawyer* and a *client* as confidential. (Evid. Code, § 952.) Evidence Code section 951 defines " 'client' " as "a person who, directly *or through an authorized representative*, consults a lawyer for the purpose of . . . securing legal service or advice . . . ."[15] (Italics added.) Were we to apply this principle, CCDC might well be considered a client for the purposes of the attorney-client privilege when, acting on behalf of the Agency, it meets with the Agency's legal counsel to discuss the Agency's eminent domain litigation. Under general attorney-client privilege principles those conversations would be entitled to confidentiality, and CCDC would have a strong argument that it should be permitted to meet in closed session to preserve that confidentiality.

■ Such analysis is not applicable here, however, because according to the clear terms of section 54956.9, the general rules of attorney-client privilege do *not* apply to determine whether a meeting with legal counsel may be held in closed session. Instead, a legislative body of a local agency is permitted to hold closed-session meetings with counsel to discuss pending litigation only as permitted by the terms of section 54956.9. Our Supreme Court has explained, based on its review of the legislative history of the 1987 amendment, that "the bill was intended to make it clear that closed sessions with counsel could *only* occur as provided in the Brown Act." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 378 [20 Cal.Rptr.2d 330, 853 P.2d 496], italics added.) We have independently reviewed the legislative history of section 54956.9 and have found no indication that the Legislature intended to permit the practice engaged in by CCDC.

Thus, we look to the content of section 54956.9 to determine whether a meeting between the legislative body of one local agency and the legal counsel of another local agency falls within the narrow category of closed-session meetings permitted by section 54956.9. Doing so, we conclude that nowhere in the plain text of section 54956.9 is the practice authorized. As CCDC acknowledges, "[w]hereas the Brown Act expressly authorizes closed

---

[15] " '[T]he client's freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could be thus delegated. A communication, then, by *any form of agency* employed or set in motion by the client is within the privilege.' " (*City & County of S. F. v. Superior Court* (1951) 37 Cal.2d 227, 236–237 [231 P.2d 26]; see also *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 639 [62 Cal.Rptr.2d 834] [in the context of a private business entity, communications between the company's outside lawyers and a company's employee who acted as a liaison with those lawyers were protected by the attorney-client privilege because the employee was " 'an authorized representative' "].)

sessions between the legislative body and its counsel regarding formally initiated litigation to which a local agency is a party, *there is no similar express authorization to meet in closed session where, as here, the legislative body delegates to another entity as its agent its powers to negotiate for the acquisition of real property.*"[16]

2. *The Attorney General Opinions Cited by the Agency and CCDC Are Inapplicable*

Although CCDC concedes that section 54956.9 does not expressly authorize its Board to meet in closed session with the Agency's legal counsel, defendants nevertheless advocate that we imply a statutory authorization based on the analysis in three opinions of the Attorney General. As we explain, the Attorney General opinions do not lend support to defendants' interpretation of section 54956.9.

The opinion on which defendants place the most reliance was issued in 1984 by the Attorney General (67 Ops.Cal.Atty.Gen. 111, 113 (1984) (the 1984 Opinion)).[17] In the 1984 Opinion, the Attorney General concluded that

---

[16] Shapiro points out that section 54956.9 was amended in 1993 (the 1993 amendment) to broaden the instances in which a local agency will be considered a party to pending litigation. The 1993 amendment provides: "A local agency shall be considered to be a 'party' or to have a 'significant exposure to litigation' if an officer or employee of the local agency is a party or has significant exposure to litigation concerning prior or prospective activities or alleged activities during the course and scope of that office or employment, including litigation in which it is an issue whether an activity is outside the course and scope of the office or employment." (Stats. 1993, ch. 1136, § 11, p. 6363.) We do not find the 1993 amendment to be relevant because it dealt with a different issue. The 1993 amendment expanded the circumstances in which a local agency is considered a "party" to a pending litigation within the meaning of section 54956.9. Here, it is undisputed that the Agency is a party to a pending eminent domain litigation and CCDC is not. The issue here—which is not addressed by the 1993 amendment—is whether an *agent* of a local agency has a right to hold closed meetings with the local agency's legal counsel.

[17] If otherwise relevant, we consider Attorney General opinions with the understanding that "[a]n opinion of the Attorney General 'is not a mere "advisory" opinion, but a statement which, although not binding on the judiciary, must be "regarded as having a quasi judicial character and [is] entitled to great respect," and given great weight by the courts. [Citations.]' " (*Community Redevelopment Agency v. County of Los Angeles* (2001) 89 Cal.App.4th 719, 727 [107 Cal.Rptr.2d 693].) This is especially true in the context of the Brown Act because "the Attorney General regularly advises many local agencies about the meaning of the Brown Act and publishes a manual designed to assist local governmental agencies in complying with the Act's open meeting requirements." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829 [25 Cal.Rptr.2d 148, 863 P.2d 218].) In the end, however, " ' "whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts." ' " (*Sanchez v. Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740].)

an airport commission created by a county board of supervisors was permitted to hold closed-session meetings with county counsel about airport-related litigation in which the county board of supervisors was a defendant. The 1984 Opinion hinged on the fact that county counsel, as the legal representative of the county, had a preexisting attorney-client relationship with *all* county entities, including the airport commission. Thus, general principles of attorney-client privilege permitted the airport commission to meet confidentially in closed session with county counsel to discuss litigation against the county board of supervisors in which it, too, was interested.

We conclude that the 1984 Opinion is irrelevant because it was issued in March 1984, before section 54956.9 took effect. The 1984 Opinion thus did not interpret section 54956.9. Instead, it interpreted court rulings implying an exception to the Brown Act's open meeting requirements based on the generally applicable principles of attorney-client privilege. (See *Sutter Sensible Planning, Inc. v. Board of Supervisors* (1981) 122 Cal.App.3d 813, 823–825 [176 Cal.Rptr. 342]; *Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 51–58 [69 Cal.Rptr. 480].) As section 54956.9 establishes, general attorney-client principles have no bearing on whether a legislative body may meet in closed session with legal counsel pursuant to section 54956.9. Accordingly, the 1984 Opinion also has no bearing on the question before us.

The two other Attorney General opinions (80 Ops.Cal.Atty.Gen. 308 (1997) (the 1997 Opinion); 86 Ops.Cal.Atty.Gen. 210 (2003) (the 2003 Opinion)) are similarly irrelevant. Those opinions include brief citations to the inapposite 1984 Opinion arising in factual and legal contexts that are not analogous to our situation.[18]

---

[18] The 1997 Opinion refers favorably to the 1984 Opinion in the course of analyzing whether an advisory committee created by a school board may meet in closed session under a *different* Brown Act provision (§ 54957) to interview candidates for the position of school superintendent on behalf of the school board. (80 Ops.Cal.Atty.Gen., *supra*, 308, 310–311.) Thus, the question presented had nothing to do with an interpretation of section 54956.9. The 2003 Opinion mentioned the 1984 Opinion in a footnote for the purpose of distinguishing it, not endorsing it. (86 Ops.Cal.Atty.Gen., *supra*, 210, 213, fn. 3.) The issue was whether appointees to a state conservancy board, who were also members of other local agency bodies (city councils and a county board of supervisors) could report in closed session to their own local agency bodies about information received in closed session of the conservancy board. In the course of deciding that this practice was not permissible, the Attorney General distinguished the closed-session meetings allowed in the 1984 Opinion on the basis that the county airport commission and the county board of supervisors described in the 1984 Opinion were all "components" of the county, and thus all represented by county counsel.

3. *Public Policy Arguments for Striking a Different Balance Between Local Agency Efficiency and Local Agency Openness Are Better Directed to the Legislature*

Focusing on public policy concerns, the Agency and CCDC argue that although section 54956.9 does not expressly authorize the CCDC Board to meet in closed session with the Agency's counsel, we should apply a broad interpretation of section 54956.9 in the interest of promoting governmental efficiency. Although CCDC and the Agency present legitimate arguments in favor of the efficiencies afforded by the Agency's delegation of certain litigation-related redevelopment tasks to CCDC, and we have no reason to doubt that CCDC diligently and competently carries out its delegated duties, we are mindful that it is not our role, but rather that of the Legislature, to strike an appropriate balance between the competing interests of openness and efficiency in the context of the Brown Act. Public policy arguments in favor of a more expansive scope for section 54956.9 based on the interest of governmental efficiency must be directed to the Legislature, not this court.

4. *Conclusion*

█ Thus, having considered and rejected defendants' arguments in favor of an expansive interpretation of section 54956.9, and with no indicia of legislative intent to the contrary, we are constrained by the plain language of the Brown Act to conclude that CCDC may not meet in closed session with the Agency's counsel to discuss pending litigation to which CCDC is not a party. In place of the confidentiality of communication afforded by the generally applicable attorney-client privilege, the Legislature has enacted a narrow exception to the Brown Act's open-meeting requirements. Under this narrow exception, the "legislative body of *a local agency*" may hold "a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation" (§ 54956.9, italics added) when it is "[l]itigation[] to which *the local agency* is a party" (*id.*, subd. (a), italics added). Because we are required to narrowly interpret exceptions to the Brown Act's open meeting requirements (*Shapiro, supra,* 96 Cal.App.4th at p. 917), and the Brown Act does not expressly authorize one local agency to delegate to a second local agency the authority to meet in closed session with legal counsel, we conclude that the CCDC Board may not meet in closed session with legal counsel for the Agency to discuss the Agency's eminent domain litigation.

## DISPOSITION

The judgment is reversed. The trial court is instructed to issue declaratory and mandamus relief on that basis that the Board of Directors of Centre City Development Corporation may not meet in closed session with legal counsel for the Redevelopment Agency of the City of San Diego to discuss the Agency's eminent domain litigation because CCDC is not a party to that litigation.

Huffman, Acting P. J., and Aaron, J., concurred.