KAMALA D. HARRIS Attorney General DIANE E. EISENBERG Deputy Attorney General
THE HONORABLE RONALD L. CALHOUN, DISTRICT ATTORNEY OF KINGS COUNTY, has requested an opinion on the following question:
May a water district hold its board meetings at the principal office of the water district if the principal office is located outside the jurisdiction of the water district?
 CONCLUSION
A water district may hold its board meetings at the principal office of the water district if the principal office is located outside the jurisdiction of the water district. *Page 2 
 ANALYSIS
The Ralph M. Brown Act[1] requires the legislative bodies of local government agencies to conduct their business and deliberations in open and public sessions, [2] with limited exceptions.[3] Agendas of the meetings must be posted in advance, [4] and members of the public must be given an opportunity to address the legislative body on items of interest.[5] The Brown Act generally requires the legislative body of a local agency to meet within the agency's jurisdictional territory, but there is an exception to the general rule for agencies that have their principal offices outside their jurisdictional boundaries. In this opinion, we conclude that the "principal office" exception applies to a water district.
A water district is a local agency for purposes of the Brown Act, [6] and a water district's board of directors is a "legislative body of a local agency" subject to the Act.[7]
Under the Brown Act, each legislative body of a local agency must establish rules setting the time and place for its regular meetings.[8] As a general rule, the Brown Act requires that regular and special meetings[9] be held within the boundaries of the territory *Page 3 
over which the local agency exercises jurisdiction.[10] However, the Act enumerates some exceptions to the boundary requirement.[11] One such exception, contained in section 54954(b)(4), permits a legislative body to "[m]eet in the closest meeting facility if the local agency has no meeting facility within the boundaries of the territory over which the local agency exercises jurisdiction, or at the principal office of the localagency if that office is located outside the territory over whichthe agency exercises jurisdiction."[12]
The facts that give rise to the request for this opinion concern a water district that is located entirely in one county, but which has its principal office in another county, contiguous to the county of the jurisdiction of the district.[13] The board of the district at issue holds its meetings at its principal office, outside the territory of the district.
We are informed that the water district board maintains that this practice saves the district money. But it has also been suggested to us that there are public places suitable for district meetings that are located closer to the territory of the district than is the principal office, and that the water district board's failure to utilize such a place for its meetings makes it more difficult for members of the public to attend district meetings. Some have argued that section 54954(b)(4) must be construed to include a geographic limitation, such that if there is no suitable meeting place within a local agency's territory, the agency may meet in the nearest suitable public facility, or in the agency's principal office, outside the agency's territory only if that office is reasonably close to the agency's territory. It is contended that without such an implied geographic limitation, a district board could choose a distant locale for the district's principal office in order to discourage public participation in government decision making, thereby contravening the policies and objectives underlying the Brown Act. *Page 4 
It is certainly true that the Brown Act is designed to promote openness and public participation in the conduct of public affairs.[14] In enacting the Act, the Legislature expressly declared:
 [T]he public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.
 The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.[15]
It is also true that we must generally "construe the exceptions to the open meeting provisions of the Brown Act narrowly and the provisions calling for open meetings and public participation broadly to effectuate the important purposes of the Brown Act."[16] *Page 5 
Nevertheless, we do not agree with the suggestion that an implied geographic limitation must be read into section 54954(b)(4), or that it is impermissible as a matter of law for a water district to hold its meetings at an office outside its territory unless the office is "reasonably close" to the territory of the district. In arriving at this conclusion, we adhere to well-established principles of statutory interpretation.
 [O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, [we] must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.[17]
Further, "[w]hen the language of a statute is clear, its plain meaning should be followed, without reading unspecified restrictions into it, unless to do so would lead to an absurd result."[18]
Indeed, if the language of a statute is clear, further construction is generally unnecessary.[19] "Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning."[20]
Section 54954(b)(4) appears to us to be clear and unambiguous, and nothing in its language conditions a local agency's authority to hold meetings at its principal office on the office being located within a certain proximity to the territory of the district. Although the first part of subdivision (b)(4) includes a "closeness" requirement, in authorizing an agency's legislative body to "meet in the closest meeting facility" if the agency has no meeting facility within its territory, to import such a requirement into the second part of subdivision (b)(4) would be to make superfluous the word "or," which links the two parts disjunctively, and which ordinarily indicates the Legislature's "intent *Page 6 
to designate alternative ways of satisfying the statutory requirements."[21] Furthermore, the presence of geographically limiting language in the first part of subdivision (b)(4), and the absence of such language in the second part of subdivision (b)(4), suggests a considered decision on the part of the Legislature to impose a "closeness" requirement in the first case and not to impose such a requirement in the second case.[22]
We conclude that it would be improper to read a geographic limitation into the second part of section 54954(b)(4) where none exists. We may not, under the guise of construction, "rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception, qualification, or modification that will nullify a clear provision or materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law."[23] The rule that the Brown Act is to be construed liberally in favor of openness and public participation does not give us the liberty to write requirements or prohibitions into its provisions that the Legislature itself did not see fit to include. "Legislative intent may not be used to bootstrap a meaning that cannot be found in the statutory language."[24]
Had the Legislature intended that the legislative body of a local agency could not meet at the agency's principal office unless the office were within a certain distance of the agency's territory, it could easily have said so in the statutes.[25] For example, while *Page 7 
the Legislature has prescribed that a hospital and safety commission conduct its meetings in accordance with the Brown Act, [26] the Legislature has also provided that "any meeting of the commission shall be held only in a public building of the county and within such county within which the commission is established," the provisions of section 54954 notwithstanding.[27] The Legislature has also limited the number of regular meetings that the Tri-Dam Project may have at its principal office, which office is outside the jurisdiction of the two irrigation districts that jointly operate it, to four meetings annually, "[n]otwithstanding . . . Section 54954 of the Government Code or any other provision of law."[28] These provisions lend further support to our conclusion that the absence of a "closeness" requirement in the "principal office" rule is not inadvertent.[29] *Page 8 
Nor do we believe that declining to read a geographic restriction into the "principal office" exception is likely to lead to undue hardships or to absurd results. Each director of a water district board must be a holder of title, or the representative of a holder of title, to land within the district.[30] This requirement means that regular meetings held at a great distance from the district would probably be inconvenient for most board members; boards are likely to adopt rules of their own that maximize the geographic convenience of their meetings. In addition, even when a local agency's principal office is outside the territory of the agency, the legislative body of a local agency may provide the public with teleconference locations, enabling members of the public to participate in meetings without having to travel to the agency's office.[31]
Finally, the Brown Act imposes stiff penalties for intentional violations of its provisions. Section 54959 provides that each member of a legislative body who attends a meeting at which action is taken in violation of any provision of the Act, and who intends to deprive the public of information to which the public is entitled, is guilty of a misdemeanor. Section 54960(a) provides, in pertinent part:
 The district attorney or any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency or to determine the applicability of this chapter to actions or threatened future action of the legislative body. . . .
In addition, under section 54960.1(a), the district attorney or any interested person may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that a local agency action taken in violation of open meeting requirements is null and void. Thus, courts have a variety of tools to "carefully scrutinize the particulars of each situation and invalidate an attempt to evade the purposes of the Act."[32]
In summary, while there are certainly colorable policy arguments for imposing geographic limits on the location of a water district's principal office, or for precluding the legislative body of a local agency from meeting in an extraterritorial principal office *Page 9 
unless the office is within a certain distance of the territory of the agency's jurisdiction, those arguments must be addressed to the Legislature.[33]
Accordingly, we conclude that a water district may hold its board meetings at the principal office of the district if the principal office is located outside the jurisdiction of the district.
[1] Govt. Code §§ 54950-54963. Unless otherwise indicated, all further statutory references are to the Government Code.
[2] Section 54953(a) provides: "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in [the Act]." Seealso Shapiro v. Bd. of Dir. of Ctr. City Dev. Corp.,134 Cal. App. 4th 170, 179 (2005).
[3] See §§ 54956.7-54957 (exceptions).
[4] § 54954.2(a)(1).
[5] § 54954.3.
[6] § 54951 (for purposes of Brown Act, "local agency" means "a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency").
[7] §§ 54952, 54958; Water Code §§ 34013, 34018, 34807, 35300 et seq.
[8] § 54954(a). In accord with this provision, the Water Code provides that the board of a water district "shall hold regular meetings at such time and place as may be agreed upon by resolution." Water Code § 34802.
[9] Pursuant to section 54952.2(a), a meeting is "any congregation of a majority of the members of a legislative body at the same time and location, including teleconference location as permitted by Section 54953, to hear, discuss, deliberate, or take action on any item that is within the subject matter jurisdiction of the legislative body." A "special meeting" may be called at any time by the presiding officer of the legislative body of a local agency, or by a majority of the members of the legislative body, and has specific notice requirements. § 54956.
[10] § 54954(b).
[11] See § 54954(b)-(e).
[12] Emphasis added.
[13] We note that Water Code section 34801 provides that a water district board "shall select and maintain an office for the district, at a fixed place which place need not be within the district."
[14] The public's right of access to information concerning the conduct of public business is now also enshrined in the California Constitution, which provides that "the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." Cal. Const. art. I, § 3(b)(1). Subdivision (b) of section 3 was added to the Constitution by Proposition 59, which was approved by California voters in 2004.
[15] § 54950. See also Epstein v. Hollywood Ent. Dist. II Bus.Improvement Dist., 87 Cal. App. 4th 862, 867 (2001) ("It is clearly the public policy of this state that the proceedings of public agencies, and the conduct of the public's business, shall take place at open meetings, and that the deliberative process by which decisions related to the public's business are made shall be conducted in full view of the public."); Intl.Longshoremen's Warehousemen's Union v. L.A. Export Terminal,Inc., 69 Cal. App. 4th 287, 293 (1999) (Brown Act "serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies"); Freedom Newsp. Inc. v.Orange Co. Employees Ret. Sys., 6 Cal. 4th 821, 825 (1993) (Brown Act "adopted to ensure the public's right to attend the meetings of public agencies").
[16] Galbiso v. Orosi Pub. Util. Dist.,167 Cal. App. 4th 1063, 1080 (2008); see also Epstein,87 Cal. App. 4th at 869 (Brown Act "is a remedial statute that must be construed liberally so as to accomplish its purpose");Shapiro v. San Diego City Council,96 Cal. App. 4th 904, 917 (2002). See generally
Cal. Const. art. I, § 3(b)(2) ("A statute . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access.")
[17] Dyna-Med, Inc. v. Fair Empl. Hous. Commn.,43 Cal. 3d 1379, 1386-1387 (1987); see also
Code Civ. Proc. § 1859.
[18] In Re Aaron S., 228 Cal. App. 3d 202, 208 (1991);see also Day v. City of Fontana,25 Cal. 4th 268, 272 (2001) ("If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.")
[19] People v. Flores, 30 Cal. 4th 1059, 1063 (2003); In reDerrick B., 39 Cal. 4th 535, 539 (2006); see also92 Ops.Cal.Atty.Gen. 102, 103-104 (2009).
[20] Diamond Multimedia Sys., Inc. v. Super. Ct.,19 Cal. 4th 1036, 1055 (1999).
[21] People v. Loeun,17 Cal. 4th 1, 9 (1997) (emphasis added); see also Houge v.Ford, 44 Cal. 2d 706, 712 (1955) ("function of the word `or' is to mark an alternative such as `either this or that'");88 Ops.Cal.Atty.Gen. 196, 198 (2005) ("or" implies disjunctive or alternative meaning).
[22] See People v. Trevino, 26 Cal. 4th 237, 242 (2001) (when Legislature "uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.").
[23] Kleitman v. Super. Ct.,74 Cal. App. 4th 324, 334 (1999); see also
Code Civ. Proc. § 1858.
[24] An Indep. Home Support Serv., Inc. v. Super. Ct.,145 Cal. App. 4th 1418, 1437 (2006).
[25] Although it is not necessary to resort to extrinsic aids such as the legislative history to resolve the present question, we note that the legislative history of section 54954 supports our conclusion. Section 54954 was one of a number of sections of the Brown Act amended in 1993 as part of an effort to strengthen the Act. See 1993 Stat. ch. 1136 § 7, and Office of Sen. Floor Analyses, 2d reading analysis of Assembly 1426 (1993-1994 Reg. Sess.) as amend. Sept. 8, 1993, pp. 1, 8. Under prior law, meetings of the legislative body of a local agency were not required to be held within the boundaries of the territory over which the agency exercised jurisdiction, unless otherwise provided for in the law under which the local agency was formed. See
former § 54954 (1953 Stat. ch. 1588 § 1). Even though the 1993 legislation introduced the general requirement that meetings be held within the agency's territory, by expressly carving out exceptions to the general rule, such as the "principal office" exception under consideration here, the Legislature also effectively preserved prior law with respect to the subject matter of the exceptions. The Legislature's failure "to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." Estateof McDill, 14 Cal. 3d 831, 837-838 (1975).
[26] Health and Safety Code § 1456(f).
[27] Health and Safety Code § 1456(g).
[28] Water Code § 21377.5. Ordinarily, meetings of a joint powers authority must occur within the territory of at least one of its member agencies, or as provided in § 54954(b).See § 54954(d).
[29] Water Code § 34804 also establishes a specific exception to section 54954 for the Elsinore Water District. The Elsinore Water District has its principal office within the district, but this office was deemed by its board of directors to be too small to accommodate more than a few members of the public. See Assembly Comm. on Loc. Govt. Analysis of Assembly 1856 (as amend. Mar. 25, 2008), 2007-2008 Reg. Sess. 3 (April 2, 2008). Water Code § 34804 provides that "the Board of the Elsinore Water District may conduct its meetings at the district office, or at any other publicly owned location that is within its boundaries, or not more than one mile outside the boundaries, of the territory over which the district exercises jurisdiction." Even though the Legislature has thus imposed a specific "closeness" requirement on extraterritorial meetings of the Elsinore Water District, this legislation does not implicate or affect the "principal office" exception of the second part of section 54954(b)(4), which comes into play only when an agency's principal office is outside the agency's territory.
[30] Water Code § 34700.
[31] § 54953(b).
[32] 79 Ops.Cal.Atty.Gen. 69, 75 (1996).
[33] See Shapiro v. Bd. of Dir. of Ctr. City Dev. Corp.,134 Cal. App. 4th at 174. See also id. at 185 (it is Legislature's role to strike balance between competing interests of openness and efficiency in context of Brown Act). *Page 1