[No. B216702. Second Dist., Div. One. Sept. 23, 2010.]

HERBERT JERE ROBINGS et al., Plaintiffs and Appellants, v. SANTA MONICA MOUNTAINS CONSERVANCY et al., Defendants and Respondents.

## COUNSEL

Woodruff, Spradlin & Smart, M. Lois Bobak; and Diane M. Matsinger for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, John A Saurenman, Assistant Attorney General, and Christina Bull Arndt, Deputy Attorney General, for Defendants and Respondents Santa Monica Mountains Conservancy and its Governing Board.

Pircher, Nichols & Meeks and James L. Goldman for Defendants and Respondents Mountains Recreation and Conservation Authority and its Governing Board.

## OPINION

**CHANEY, J.**—Plaintiffs and appellants Herbert Jere Robings, Rick Mullen, Ken Nilsen, the Santa Barbara County Taxpayers Association, and the Ramirez Canyon Preservation Fund (appellants) appeal from the final amended judgment of the superior court entered May 26, 2009, denying plaintiffs' challenge to certain acts of defendants Santa Monica Mountains Conservancy, Mountains Recreation and Conservation Authority, and the respective governing boards of those entities. We find no error and affirm.

## Background

### The Santa Monica Mountains Conservancy

The Santa Monica Mountains Conservancy Act (the Conservancy Act) became effective as of 1980 and was later amended. (Pub. Resources Code, § 33000 et seq.) The Conservancy Act designated the Santa Monica Mountains Zone, finding it to be "the last large undeveloped area contiguous to the shoreline within the greater Los Angeles metropolitan region, comprised of Los Angeles and Ventura Counties," and declaring it to be "a unique and valuable economic, environmental, agricultural, scientific, educational, and recreational resource that should be held in trust for present and future generations . . . ." (Pub. Resources Code, § 33001.)

In the Conservancy Act the Legislature found problems existing with respect to the zone that it identified as beyond the ability of local government to effectively address. (Pub. Resources Code, § 33008.) To deal with these problems, the Conservancy Act created the Santa Monica Mountains Conservancy (the Conservancy) as a single governmental agency with responsibility for implementing a mandate to protect and preserve the Santa Monica Mountains Zone and to promote recreational, open space, park, and conservation purposes through the acquisition, development, and management of properties and awarding of grants to other governmental and nonprofit agencies with similar goals. (Pub. Resources Code, § 33200, subd. (a); *City of Malibu v. Santa Monica Mountains Conservancy* (2002) 98 Cal.App.4th 1379, 1381 [119 Cal.Rptr.2d 777].)

The Conservancy Act empowers the Conservancy to receive grants "from any source" in order to carry out its purposes and objectives. (Pub. Resources Code, §§ 33202, 33211, subd. (c).) It authorizes the Conservancy to award grants to governmental and certain nongovernmental agencies in order to fund acquisition of sites for park, recreation, and related conservation purposes (Pub. Resources Code, § 33204, subds. (a), (c)); in order to restore areas that are adversely affecting or impeding orderly development, including

the acquisition of property rights and interests in order to create buffer zones needed to control the character and intensity of development in the area (Pub. Resources Code, § 33204, subd. (b)); to fund programs specified in the Conservancy Act (Pub. Resources Code, § 33204, subd. (a)); to enter into agreements with local districts for the expenditure of the district's funds consistent with open-space purposes (Pub. Resources Code, § 33207.7); and generally to take whatever other measures are necessary for purposes consistent with the Conservancy Act (Pub. Resources Code, § 33211, subd. (c)). And it authorizes grants to local agencies "to carry out improvements, maintenance, acquisitions, or educational interpretation programs that directly relate to a project that [the Conservancy] is otherwise authorized to undertake . . . ." (Pub. Resources Code, § 33204.2, subd. (a); see *id.*, § 33204.27, subd. (a).)

▮ The Conservancy is authorized to coordinate and contract with the Department of Parks and Recreation with respect to the recreation potential for any property acquisition. (Pub. Resources Code, § 33203.) And it is specifically empowered to enter into interagency agreements with resource conservation agencies in order to carry out its purposes and objectives. (*Ibid.*)

*Proposition 50*

In November 2002, the voters of California approved Proposition 50—the Water Security, Clean Drinking Water, Coastal and Beach Protection Act of 2002. (Wat. Code, § 79500 et seq.) Proposition 50 made $200 million available for appropriation by the Legislature for the protection of coastal watersheds, including the acquisition, protection, and restoration of land and water resources, and to cover associated planning, permitting, and administrative costs necessary to implement these objectives. (Wat. Code, § 79570.) Of these funds, $20 million was designated for expenditures by the Conservancy for the protection of the Santa Monica Bay and Ventura County coastal watersheds pursuant to the Conservancy Act. (Wat. Code, § 79570, subd. (c).) Of that allocation, 10 percent—$2 million—was earmarked for grants "for the acquisition and development of facilities to promote public access to and participation in the conservation of land, water, and wildlife resources," specifically including training and research facilities for watershed protection and conservation activities, and nature centers that provide public access to outdoor experiences and conservation education. (Wat. Code, § 79571.)

*The Mountains Recreation and Conservation Authority*

In November 2004, the Conservancy entered into an agreement with the Conejo Recreation and Park District, joined soon afterward by the Rancho Simi Recreation and Park District, to create the Mountains Recreation

and Conservation Authority (the Conservation Authority) under the Joint Exercise of Powers Act, Government Code section 6500 et seq. The agreement's express purpose was to "establish as a local agency . . . a legal entity separate from the parties to acquire, develop, and conserve additional park and open space lands . . . ." An additional stated purpose was to provide for financing, maintenance, servicing, and operations of capital acquisitions and improvements.

The Conservation Authority's governing board has four members, including a representative from the Conservancy, one from each of the two member districts, and one at-large member. The agreement designates the executive director of the Conservancy to serve as the Conservation Authority's executive director, and the Conservancy's staff counsel to act as the Conservation Authority's acting counsel, until otherwise determined by the Conservation Authority's governing board. Under the joint powers agreement, the Conservation Authority is to carry out those purposes, furthering the work of public and private environmental agencies, "by providing the expertise of the [Conservation Authority] and its officers and employees to organizations that have compatible purposes to those of the [Conservation Authority]."

*The Conservancy's Grant of Proposition 50 Funds to the Conservation Authority*

In February 2006, the Conservancy passed Resolution No. 06-18, approving a $200,000 grant to the Conservation Authority pursuant to its statutory mandate to "[a]ward grants to state agencies, cities, counties, resource conservation districts, and park and recreation districts for the purpose of acquiring sites identified as necessary for park, recreation, or conservation purposes and for development of essential related public facilities." (Pub. Resources Code, § 33204, subd. (c).) On August 28, 2006, the Conservancy approved Resolution No. 06-66, amending the earlier grant in various respects and expanding it to $585,000. And on November 20, 2006, the Conservancy approved Resolution No. 06-84, further amending and modifying the grant pursuant to its statutory authority to protect coastal watersheds, including "acquisition, protection, and restoration of land and water resources and associated planning, permitting, and administrative costs, and for the acquisition and development of facilities to promote public access to and participation in the conservation of land, water, and wildlife resources . . . ." (See Pub. Resources Code, §§ 33204.27, 33204.2, subd. (a).)

The grant, as amended, provided funding to develop a plan for managing the use, preservation and protection of specified areas, including environmental studies to address complex coastal development permit processes and problems with the current permits, restoration of a specified creek, and

revision and expansion of public outreach and access for specified park and wildlife areas, all in preparation for the plan's submission for California Coastal Commission approval.[1]

*Appellants' Challenge*

On October 23, 2006, appellants filed a "reverse validation" action under Code of Civil Procedure section 863, and on May 1, 2007, they filed a first amended complaint. As amended, the action sought to invalidate the Conservancy's February 2006 grant of Proposition 50 funds to the Conservation Authority, and the August and November 2006 amendments to it, and to bar the expenditure of the granted funds as illegal.

Section 860 of the Code of Civil Procedure provides that a public agency may test the legal validity of certain of its acts by filing an in rem "validation" action within 60 days. Under section 863, interested parties may also, within the same 60 days, file a "reverse validation" action to challenge the validity of those acts. (Code Civ. Proc., § 863; *Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 30, fn. 16 [49 Cal.Rptr.3d 95].) Acts that remain unchallenged within those periods are immune from challenge. (Code Civ. Proc., § 870, subd. (b); *California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1420 [53 Cal.Rptr.3d 626].)

*The Trial Court's Ruling and the Appeal*

After a number of days of trial in January 2009, the only issues remaining for decision were appellants' contentions that the Conservancy lacked authority to make the grant, and that the Conservation Authority lacked authority to receive it. After hearing objections to its tentative statement of decision, the trial court filed its 50-page statement of decision along with an addendum. On May 26, 2009, it entered judgment rejecting appellants' challenge on the merits. Appellants filed a timely appeal on June 4, 2009. (Code Civ. Proc., § 870, subd. (b).)[2]

---

[1] The specific modifications that the amendments made to the terms of the Conservancy's grant are not relevant to our analysis.

[2] The superior court docket shows the notice of appeal as having been filed on June 4, 2009, nine days after entry of judgment. However although the copy of the notice of appeal that appears in the record on appeal is dated June 3, 2009, it bears a May 4, 2009 file stamp, indicating it was filed before the judgment's entry. The discrepancy is of no significance to the appeal, however. If the docket entry is correct and the file stamp is in error, the appeal is timely (Code Civ. Proc., § 870, subd. (b) [appeal from validation ruling is timely within 30 days after notice of entry of judgment]); and if the docket entry is wrong and the file stamp is correct, the appeal would remain valid and timely under rule 8.104(e), California Rules of Court.

*Standard of Review*

The single issue raised by the appeal is whether the Conservancy's grant of funds to the Conservation Authority exceeded the Conservancy's authority under the law.[3] Appellants do not challenge the trial court's factual determinations; they accept respondents' statement of the facts, "so far as it goes," as undisputed. We independently review the trial court's application of statutory provisions to the undisputed facts. (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 293 [81 Cal.Rptr.2d 456].)

## Discussion

Appellants' challenge to the Conservancy's funding grant is narrow. They argue that the Conservancy lacks authority to make a funding grant to the Conservation Authority, a joint powers agency of which it is a member. They contend that such a grant is equivalent to a grant of funds to itself, which the Conservancy lacks the authority to make.

But appellants do not challenge the Conservancy's power to join with the park and recreation districts in a joint powers agreement to create the Conservation Authority; they confirm that under Government Code section 6507, the Conservation Authority is an entity separate and independent from its members; and they expressly concede that the Conservancy would be authorized to make appropriate grants to the park and recreation districts that are the other members of the Conservation Authority. Although appellants contest the Conservancy's power and authority to fund the Conservation Authority's project, they point to no specific statutory language, legislative intent, or relevant case law that supports that position.

 It is of course true, as appellants argue, that the provisions of the Conservancy Act do not provide the Conservancy with *carte blanche* to expend its funds in any manner without regard to the statutory limits of its powers. But the Conservancy Act does require that appellants must bear the burden of proof to affirmatively demonstrate that the terms of the challenged grant exceed the Conservancy's authority, in order to overcome the rebuttable presumption that the Conservancy's acts are not in conflict with the enabling statute. (*Fox v. San Francisco Residential Rent etc. Bd.* (1985) 169 Cal.App.3d 651, 655 [215 Cal.Rptr. 565]; see Evid. Code, § 500 [party has burden of proof as to each fact the existence or nonexistence of which is essential to

---

[3] Appellants characterize the issue raised by their appeal as "whether [the Conservancy] can grant bond funds to a joint powers agency of which it is a member without violating the Common Powers Rule [of the Joint Exercise of Powers Act], when [the Conservancy] does not have the authority to grant those bond funds to itself."

claim being asserted].) That is a burden appellants have failed to carry. Appellants' opening brief does not identify any way in which the challenged grant to the Conservation Authority exceeds the Conservancy's powers, other than that the Legislature has not expressly conferred on the Conservancy the power to grant funds to it.[4]

Appellants' challenge rests on the following logic: A joint powers entity lacks authority to exercise powers beyond those that are shared in common by all of its members; no law specifically authorizes the Conservancy to grant funds to itself or to receive a grant of funds from itself; the Conservancy therefore lacks authority to grant those funds to the Conservation Authority. Underlying that logic are at least two assumptions: that the Conservancy's status as a member of the Conservation Authority means that its grant of funds to the Conservation Authority is equivalent to a grant of funds to itself; and that because the Conservancy lacks authority to grant funds to itself, it lacks authority to grant funds to the Conservation Authority, a joint powers agency of which it is a member.

We conclude that the assumptions that underlie appellants' logic are unfounded, and appellants' conclusion is unsupported.

■ The Joint Exercise of Powers Act (Gov. Code, § 6500 et seq.) provides a means by which governmental agencies may join together to accomplish goals that they could not accomplish alone, or that they might more efficiently and more effectively accomplish together. Under that act, when authorized by their governing bodies to do so, "two or more public agencies by agreement may jointly exercise any power common to the contracting parties," and they may join in the creation of a separate entity to exercise those powers on their behalf. (Gov. Code, § 6502; see *Burbank-Glendale-Pasadena Airport Authority v. Hensler* (2000) 83 Cal.App.4th 556, 558 [99 Cal.Rptr.2d 729].) The "common powers" rule—the rule that the powers that may be exercised by a joint powers agency can be no greater than the powers shared by each of the agency's constituent members—arises from this provision.

The test for compliance with the common powers rule is whether each of the agency's members had the power to perform the contested acts—whether each had the power "to do unilaterally what was actually done." (*Beckwith v. County of Stanislaus* (1959) 175 Cal.App.2d 40, 48 [345 P.2d 363].) The issue raised by appellants' challenge under the common powers rule therefore is whether the Conservancy has the power to grant funds to the Conservation Authority, a joint powers agency of which it is a member.

---

[4] For this reason, we need not examine in detail the specific projects to be funded by the challenged grants.

We answer this question in the affirmative. Appellants have not identified any legal impediment to the Conservancy's power to grant funds for the purposes it sought to have the Conservation Authority accomplish, or any law that precludes the Conservancy's delegation of these projects, along with the funding to implement them, to the Conservation Authority.

*The Conservancy Is Not Prohibited by Law from Sharing in a Grant of Proposition 50 Funds.*

Appellants have offered no authority that would support a determination that the Conservancy lacked authority to make the challenged funding grant—or even to *receive* a grant of funds designated for those same purposes (a corollary to appellants' parallel argument, discussed below, that a grant of funds to the Conservation Authority is equivalent to a grant of funds to the Conservancy).

■ The Conservancy is empowered by law to acquire and develop properties and facilities in order to promote public access and public participation in the conservation of land, water and wildlife resources, including funding projects to undertake corrective measures for the enhancement of the region's natural and scenic character. (Pub. Resources Code, § 33204, subd. (e).) It is empowered to acquire funds "from any source" (Pub. Resources Code, §§ 33202, 33211, subd. (a)); to contract with public or private agencies for required professional services (Pub. Resources Code, § 33211, subd. (b)); and to "[d]o any and all . . . things necessary to carry out the purposes" of the Conservancy Act (Pub. Resources Code, § 33211, subd. (c)). And it is empowered to grant funds to other local and state agencies in order to enhance the natural and scenic character of its resources and to advance its legislative mandates. (Pub. Resources Code, §§ 33204, subds. (a), (c), (e), 33204.27, subd. (a).)

■ The Conservation Authority is a local agency whose charter specifically contemplates that it will contract with, and receive funding grants from, the Conservancy. (Gov. Code, § 6542.5 [public agency created under Joint Exercise of Powers Act, other than a federal or state department or agency, is "local agency"]; *McKee v. Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force* (2005) 134 Cal.App.4th 354, 358–359, 362 [36 Cal.Rptr.3d 47] [agency created as separate entity under Joint Exercise of Powers Act constitutes "local public agency"].) As far as the record shows, the programs that are funded by the Conservancy's funding grant to the Conservation Authority are within the Conservancy's powers to advance, are within the Conservancy's powers to grant funds to implement, and are within the Conservancy's powers to coordinate with local agencies (including the Conservation Authority) to undertake.

This conclusion mirrors appellants' own concessions on appeal. They do not contend that the purposes for which the funds were granted are beyond the Conservancy's powers to advance. According to appellants: "The question is not whether [the Conservancy] has the power to make grants to or receive grants from other agencies . . . . The question is whether [the Conservancy] has the power to make a grant to a joint powers agency *of which it is a member*—or to receive a grant from itself as a member of such a joint power agency . . . ."

This concession narrows appellants' appeal to the contention that, because the Conservancy "is not directly empowered to make a grant of bond funds to itself or to receive a grant of bond funds from itself," it may not "make grants to a joint powers agency of which it is a member" without violating the common powers rule.

*The Conservancy Act Does Not Preclude the Conservancy's Participation in Joint Powers Agreements and Agencies in Order to Perform Its Mandated Functions.*

██ Not only do appellants identify no specific prohibition against the Conservancy's membership in an entity to which it provides otherwise-appropriate funding, the enabling statutes strongly imply that the Legislature intended no such restriction. In establishing the Conservancy, the Legislature expressly authorized the Conservancy to acquire properties, interests in properties, and the rights to develop properties. (Pub. Resources Code, § 33203.) And it authorized the Conservancy to enter into interagency agreements, "in order to carry out the purposes and objectives of this division"—which include the acquisition, protection, preservation, conservation, and maintenance of land within the Santa Monica Mountains Zone. (Pub. Resources Code, § 33203.) ██ Consistent with these provisions, the Joint Exercise of Powers Act permits public agencies, such as the Conservancy, to administer their common purposes through independent joint powers entities "constituted pursuant to the agreement" of their members. (Gov. Code, § 6506.)

██ In construing the law, the court's primary aim is to determine the legislative intent, looking first to the words of the statute. (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) ██ But the expressly granted powers do not tell the whole story; in the absence of express restrictions, implied powers may arise as well from the purposes for which the agency was created. (*Zack v. Marin Emergency Radio Authority* (2004) 118 Cal.App.4th 617, 633 [13 Cal.Rptr.3d

323].) As the Supreme Court has noted in another context, "legislative silence should not be amplified into an implied negation of a requirement . . . that is necessary to the effective application of the statute." (*Forest Lawn Co. v. City Council* (1963) 60 Cal.2d 516, 521 [35 Cal.Rptr. 65, 386 P.2d 665].)

One of the criteria courts employ to determine whether a power is implied by legislation is whether " 'the [L]egislature could have entertained an intention contrary to that implication.' " (*Zack v. Marin Emergency Radio Authority, supra*, 118 Cal.App.4th at p. 634, quoting 2A McQuillin, Municipal Corporations (3d rev. ed. 1996) § 10.12, p. 338.) We cannot read into the Conservancy Act an implied prohibition against the Conservancy's creation of, participation in, or funding of a joint powers entity, such as the Conservation Authority, to aid in carrying out the Conservancy's mandated functions. (*Dickey v. Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 812 [151 P.2d 505] [" 'when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent' "].) Nor do the relevant statutes indicate any intention that the Conservancy's membership in a joint powers agency would necessarily disqualify that agency from receiving otherwise-appropriate funding from the Conservancy, consistent with the Conservancy's and the agency's legitimate purposes and objectives.

Under these tests, appellants have not shown that the trial court erred in declining to find that the Conservancy exceeded its authority under the Conservancy Act. (*Beckwith v. County of Stanislaus, supra*, 175 Cal.App.2d at pp. 44–45 [presumption is that parties to joint powers agreement "acted reasonably and within the scope of their respective powers" unless affirmatively shown otherwise].) Although "general objectives underlying legislation 'cannot supplant the intent of the Legislature as expressed in a particular statute' " (*City of Malibu v. Santa Monica Mountains Conservancy, supra*, 98 Cal.App.4th at p. 1385, quoting *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449]), we are aware of no legislative expression of intent that supports the result appellants seek here. We see no legislative expression of an intention to preclude the Conservancy from making an otherwise-appropriate grant of funds to a joint powers agency in which it shares membership—a funding restriction that apparently would render it difficult or impossible for the Conservancy to carry out its purposes and objectives in the manner contemplated by the legislation pursuant to which it was created.

*The Conservation Authority Is a Separate Entity, Independent from Its Constituent Members.*

Appellants argued at trial that because of the agencies' overlapping personnel, the Conservation Authority acts as no more than "an arm" of the Conservancy. But the appeal does not challenge the trial court's contrary conclusion, arrived at following its detailed analysis of the evidence and the law.[5]

 The statutory language would in any event doom any challenge to the trial court's conclusion. As appellants admit, the Joint Exercise of Powers Act expressly establishes the Conservation Authority's status as an independent entity. Government Code section 6507 provides that a joint powers agency "is a public entity separate from the parties to the agreement," and section 6542 echoes that provision.[6] The parties' joint powers agreement also provides that "[t]he authority hereby created shall be a separate entity . . . ."

The Conservancy is authorized by law to create a joint powers entity to further its mandated functions, and that entity—the Conservation Authority—acts as a separate entity, independent from the Conservancy and its other member agencies. These statutory provisions, and the trial court's fully supported findings, are wholly inconsistent and incompatible with appellants' contention—critical to their logic—that the Conservancy's grant of funds to the Conservation Authority is equivalent to a grant of funds to the Conservancy itself.[7]

## DISPOSITION

 The Conservancy is authorized and directed by law to do "any and all" things necessary to carry out its statutorily mandated purposes, including

---

[5] The trial court found as factual matters, for example, that while the Conservancy has only a few employees, the Conservation Authority has over 100; that the Conservancy is a state agency, but the Conservation Authority is not; that the Conservation Authority manages and operates properties for a number of entities other than the Conservancy; and that the Conservation Authority acts independently of the Conservancy regardless of the fact that the same individual currently acts as the chief executive officer of both entities. In light of these and other facts, the trial court found that "there is nothing to indicate or suggest that the [Conservancy] and the [Conservation Authority] are one [and] the same."

[6] Section 6542 of the Government Code provides: " 'Entity' as used in this article means any agency, board or commission provided for by a joint powers agreement pursuant to Article 1 of this chapter. Such agency, board or commission is an entity separate from the public agencies which are parties to such agreement." (Gov. Code, § 6542.)

[7] In light of our conclusion with respect to the merits of the issue raised on appeal, we do not address respondents' suggestion that the trial court erred in ruling that appellants' action was not time-barred.

a grant in funds to be used for the preservation and protection of recreational, educational, and environmental resources within its territory. (Pub. Resources Code, §§ 33204, 33204.2, 33204.27, 33211, subd. (c).) Its membership in the Conservation Authority, the joint powers entity that is the recipient of its funding grant, does not render the grant in excess of its power to award.

The judgment of the trial court is affirmed.

Mallano, P. J., and Rothschild, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 12, 2011, S187836.