Filed 10/25/24  C.O.M.E.T. v. City of Redlands CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8. 1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| C.O.M.E.T., | |
| Plaintiff and Appellant, | G063087 |
| v. | (Super. Ct. No. CIVDS1906437) |
| CITY OF REDLANDS, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino, Donald R. Alvarez, Judge. Affirmed.

Law Office of Joyce Caraway and Joyce Caraway for Plaintiff and Appellant.

Best Best & Krieger, Scott W. Ditfurth, Holland P. Stewart, and Carl C. Jones for Defendant and Respondent.

\*               \*               \*

This is an action brought by Citizens of Mentone Empowered Together, (C.O.M.E.T.), against the City of Riverside and the San Bernardino County Local Area Formation Commission ("LAFCO")[1] to challenge the validity of a series of property annexations and annexation agreements between the City of Redlands and owners of properties in the unincorporated area of nearby Mentone.

Although such property annexations must be challenged through what is known as a "reverse validation" cause of action—an in rem proceeding that must be brought within 60 days of the date of annexation—C.O.M.E.T.'s  initial complaint included no such cause of action. Instead, it was pleaded as an ordinary complaint against two named parties plus Doe defendants, who are alleged to have proximately caused the injuries and damages alleged.

The scope of the complaint was whittled down through a series of demurrers. After the court ruled that C.O.M.E.T. was required to challenge the property annexations through a cause of action for reverse validation, it subsequently sustained a demurrer to that cause of action finding it was barred by the statute of limitations. The court later granted summary judgment against C.O.M.E.T. on its causes of action for declaratory relief and intentional and negligent misrepresentation. C.O.M.E.T. appealed.

We affirm. C.O.M.E.T.'s reverse validation cause of action, first alleged in C.O.M.E.T.'s second amended complaint, was barred by the statute of limitations. C.O.M.E.T.'s failure to challenge any individual annexation

_____

[1] LAFCOs are "administrative bodies created by the Legislature to oversee urban development. [Citation.] Each county in California is required to have a LAFCO." (*Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2016) 223 Cal.App.4th 550, 557-558; § 56325.)

2

decision within the statutory period makes each decision immune from any later challenge. That immunity, in turn, means that neither a cause of action based on misrepresentation, nor a declaratory relief cause of action challenging the legality of annexations, can provide C.O.M.E.T. with the relief it now seeks. We find no error in any of the trial court's other rulings, and we conclude that to the extent C.O.M.E.T. sought to obtain relief based upon harm allegedly inflicted on individual property developers, it lacked standing to do so.

## FACTS

C.O.M.E.T.'s initial complaint alleged that it "is a 501(c)(3) organization in the unincorporated, rural territory of Mentone," which is an area abutting the east side of Redlands; it purports to represent all residents and property owners in Mentone. C.O.M.E.T. stated there are too many residents of Mentone to list individually and thus it requested certification of this case as a class action.[2]

The complaint alleged that in the 1970's, "LAFCO placed Mentone in Redlands' 'sphere of influence,'" and that "[o]ver the years, Redlands purchased all of the water companies located in Mentone." Mentone is therefore dependent on Redlands for all of its potable water. Historically, Redlands has provided water service to properties outside its city limits, including Mentone.

However, in 1997, Redlands's voters passed Measure U, which provided that as a general rule, Redlands would not provide utility services to

---

[2] Our record contains no evidence that C.O.M.E.T. ever pursued class action certification; its opening brief on appeal makes no argument related to such certification.

areas outside its city limits until those areas were annexed to the city. But Redlands would allegedly extend utility services to areas outside the city if (1) those areas are not contiguous to the city and thus not eligible for immediate annexation;[3] and (2) the city and landowner had entered into a properly recorded and binding agreement establishing covenants running with the land that obligate the landowner to comply with Redlands's development standards, pay all capital improvement and other development fees that would apply if the property were within city limits, and agree to annexation at Redlands's request.

The complaint also alleged that "Redlands demands payment of 'development impact fees,'" relating to police, fire, and library services, as well as other development fees, as a condition of providing water and sewer service, despite the fact it does not provide those other services in Mentone, all in violation of Government Code section 66001.

Finally, the complaint alleged Redlands is obligated to provide Environmental Impact Reports to LAFCO relating to the conversion of Mentone's agricultural land when it is converted to residential use; instead, the complaint continues, Redlands provides LAFCO with Mitigated Negative Declarations, which do not satisfy its obligations, and LAFCO has endorsed that practice.

Based on those factual allegations, C.O.M.E.T. stated causes of action for (1) civil extortion; (2) injunction (seeking to enjoin Redlands from continuing its allegedly extortionate acts); (3) declaratory relief seeking a

---

[3] "Unless otherwise provided in this division, territory may not be annexed to a city unless it is contiguous to the city at the time the proposal is initiated pursuant to this part." (Govt. Code, § 56741.)

4

declaration that Redlands' conduct is extortionate and violates applicable law; (4) rescission of all prior annexation agreements and restoration of properties to "Mentone territory"; (5) equitable estoppel to restore Redlands's pre-Measure U water provision policies; (6) unfair business practices; and (7) quo warranto.

Although C.O.M.E.T. explicitly sought rescission of annexation agreements allegedly entered into between Redlands and multiple third party developers, it never identified those developers, nor did it name them as parties to the litigation. After Redlands contacted C.O.M.E.T.'s counsel and expressed its intention to demur to the complaint, C.O.M.E.T. voluntarily agreed to file a first amended complaint. Our record does not include that pleading.

In November 2019, the court denied C.O.M.E.T.'s motion for a preliminary injunction. It noted that Redlands' opposition to the motion argued that any challenge to a "sphere of influence" or annexation determination must be brought as a reverse "validation" proceeding pursuant to Government Code section 56103 and Code of Civil Procedure sections 860 and 863, and that such an action is required to be brought within 60 days of the challenged action. The court concluded that argument was "generally well taken," and pointed to the fact that a reverse validation proceeding "'is an *in rem* action whose effect is binding on the agency and on all other persons." (Quoting *In re Quanitification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 833.) The court noted that "if no interested party brings a reverse validation action within the mandated 60 days, then a public agency's action is forever immune from attack 'whether it is legally valid or not.'"

Based on that procedural flaw, plus several other legal and factual issues, the court concluded C.O.M.E.T. had not demonstrated a likelihood of prevailing on the merits of its claim.

In September 2020, C.O.M.E.T. filed its second amended complaint, adding causes of action styled "intentional or negligent misrepresentation" and "reverse validation," and adding as parties the California Association of Local Agency Formation Commissions "CALAFCO"[4] and "all persons interested in the matter of annexations of Mentone Territory."

The second amended complaint also added detailed historical facts relating to Redlands' annexation of another section of Mentone property in 1956—referred to as Annexation No. 4—which was allegedly illegal. And because that annexation was allegedly void, "succeeding annexations" of other properties were also allegedly void.

The second amended complaint also added statutory citations to demonstrate why Redlands's annexation of Mentone properties, and its annexation agreements, were illegal.

Additionally, C.O.M.E.T. alleged that Redlands has charged illegally exorbitant fees to Mentone residents in connection with the annexation agreements, including charging Mentone customers more for water than it charges Redlands customers, and that Government Code

---

[4] C.O.M.E.T. alleges that CALAFCO illegally lobbied and interfered with the Legislature's consideration of a proposed new law that would require cities to provide services outside their jurisdictions without regard to whether a property owner agrees to annexation. C.O.M.E.T. seeks declaratory relief against CALAFCO based on the alleged existence of a genuine controversy about whether CALAFCO's lobbying activity was legal.

section 66006 "provides that any fees that are paid for developments which are not completed shall be returned to the paying developer."

C.O.M.E.T.'s recission and restitution cause of action sought recission of all annexations of Mentone property since Annexation No. 4, plus recission of all annexation agreements between Redlands and the unidentified third parties; it also sought an order requiring Redlands to pay restitution to all of the unidentified property owners of the unreasonable portion of development fees charged to them, and the fees paid for services Redlands did not provide.

C.O.M.E.T.'s cause of action for reverse validation alleged that all annexations of Mentone property since Annexation No. 4 were illegal and void *ab initio*; therefore, no statute of limitations applies to these claims. It further alleges that Measure U was unlawfully enacted and enforced, and Redlands therefore must return to the county's jurisdiction all Mentone property territory taken pursuant to Measure U.

Redlands demurred to the second amended complaint. It argued C.O.M.E.T. lacked standing, and that each of the causes of action was also legally flawed for other reasons.

The court rejected Redlands's standing argument, concluding that C.O.M.E.T. had "associational standing." It sustained the demurrer to the civil extortion cause of action with leave to amend, overruled the demurrer to the cause of action for declaratory relief, sustained the demurrer to the cause of action seeking rescission and restitution with leave to amend, sustained the demurrer to the cause of action seeking equitable estoppel without leave to amend, overruled the demurrer to the cause of action for intentional or negligent misrepresentation, sustained the demurrer to the cause of action alleging unfair business practices without leave to amend,

7

sustained the demurrer to the cause of action seeking injunction without leave to amend, and sustained the demurrer to the cause of action seeking reverse validation without leave to amend on the ground the cause of action was barred by the statute of limitations.

C.O.M.E.T. filed its third amended complaint in April 2021. It stated causes of action for civil extortion, declaratory relief, rescission and restitution, and intentional or negligent misrepresentation. Redlands again demurred and the court sustained the demurrer to the causes of action for civil extortion and rescission and restitution, without leave to amend.

In October 2022, Redlands moved for summary judgment on the remaining causes of action. It argued that it was entitled to judgment because C.O.M.E.T. lacked standing to pursue the claims belonging to individual property owners; it also sought summary adjudication of each of the two remaining causes of action—declaratory relief and intentional or negligent misrepresentation—because C.O.M.E.T. lacked evidence to support them and, alternatively, because it had immunity for misrepresentation under Government Code section 818.8. Although the court again rejected Redlands's standing argument, it agreed with Redlands's other contentions and granted the motion.

The court then entered judgment in favor of Redlands. C.O.M.E.T. appeals from the judgment.

DISCUSSION

In its opening brief, C.O.M.E.T. challenges the court's dismissal of its civil extortion action, its determination that C.O.M.E.T.'s original complaint did not qualify as a reverse validation action, its dismissal of other causes of action based on C.O.M.E.T.'s failure to allege a timely claim for reverse validation, its determination that C.O.M.E.T. lacked standing to

8

pursue the claims alleged, and its determination that Redlands had immunity from liability. C.O.M.E.T. also asserts the court erred by failing to address Redlands's "'pre-' annexations" and its improper "development impact fees."

As a preliminary matter, our review of C.O.M.E.T.'s briefing and the trial court's ruling suggests the list of rulings C.O.M.E.T. claims to be challenging and the argument headings in its opening brief do not always align. Moreover, many of C.O.M.E.T.'s complaints about the court's rulings are not supported by citations to the record or authority. We ignore any unsupported assertions and complaints. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [a brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"]; *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court'"]; see also Guthrey v. State of California (1998) 63 Cal.App.4th 1108, 1115 ["It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived'"].)

To the extent C.O.M.E.T. has attempted to support its points by citing to page(s) in the record where the same argument was made below, we do not consider those citations. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2.["[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record"].)

9

Because some of the rulings challenged by C.O.M.E.T. relate to demurrers, while others were made in the context of a motion for summary judgment, the standards of review we apply in determining whether those rulings were erroneous are not the same. We consequently reject C.O.M.E.T.'s assertions that conflate the court's ruling on a demurrer with its ruling on summary judgment.[5]

I.

STANDARDS OF REVIEW

A.    *Demurrer Standards*

A demurrer tests the sufficiency of a complaint by raising questions of law. (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 20.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Because the demurrer tests the allegations of the pleading, we do not consider whether those allegations are supported by evidence. And we do not consider factual contentions not contained in the complaint unless they are matters subject to judicial notice. (*Ibid.*; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010)

---

[5]    For example, C.O.M.E.T. argued that the statement in the court's summary judgment ruling that C.O.M.E.T. had not shown that Redlands is annexing territory now or in the future "inexplicably contradicted the court's previous finding that the allegations as stated address relief from the future imposition of this requirement [citation], which was based on the timely annexation 'Agreement' attached to several filed documents." (Underscoring omitted.) But mere allegations in the complaint, which are sufficient to withstand a demurrer, do not qualify as "evidence" that can be relied upon to oppose a summary judgment. Thus, there was no inconsistency in the court's rulings.

10

181 Cal.App.4th 471, 483, fn. 5 ["It is through this limited lens that we consider the sufficiency of [the] complaint against . . . demurrer"].)

"[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) Moreover, "in ruling on a demurrer, the trial court is obligated to look past the form of a pleading to its substance." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908; see *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 [court looks past "'[e]rroneous or confusing labels'" to "the actual gravamen of [plaintiff's] complaint to determine what cause of action, if any, he stated"].)

## B.    Summary Judgment Standards

We also apply a de novo standard to our review of a summary judgment ruling. However, a summary judgment tests the evidence, rather than the allegations of the complaint, to discern whether there are triable issues of fact. (Code Civ. Proc., § 437c.)

In conducting our de novo review, "'we do not transform into a trial court.'" (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379 (*Dinslage*).) Instead, as with other appeals, we start with the presumption that the judgment or trial court ruling is correct, and error must be affirmatively shown by the appellant. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Consequently, ""[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . . 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and,

11

therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.""" (*Dinslage, supra*, 5 Cal.App.5th at p. 379; *Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 645 [appellant challenging a summary judgment bears the burden of establishing error on appeal, even though the respondent had the burden of proving its right to summary judgment in the trial court].)

## II.

### CAUSE OF ACTION FOR REVERSE VALIDATION

C.O.M.E.T. argues that its original complaint qualified as a reverse validation action because the complaint challenged Redlands's annexation actions; C.O.M.E.T. also argues that the complaint was timely because it attached a copy of one of the annexation agreements, dated just two weeks prior to the complaint's filing date. We disagree.

Government Code section 56103, which is part of the Cortese–Knox–Hertzberg Local Government Reorganization Act of 2000 (Gov. Code, § 56000 et. seq.) requires that a property annexation or sphere of influence determination be challenged through a reverse validation proceeding: "An action to determine the validity of any change of organization, reorganization, or sphere of influence determination completed pursuant to this division shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure."

Code of Civil Procedure section 860, in turn, provides that a public agency may test the legal validity of certain of its acts by filing an in rem validation action within 60 days. If the public agency does not pursue such a validation action, Code of Civil Procedure section 863 authorizes any interested person to file a reverse validation action—within the same 60-day

12

period—to challenge the validity of the public agency's acts. (Code Civ. Proc., § 863; *Robings v. Santa Monica Mountains Conservancy* (2010) 188 Cal.App.4th 952, 960.)

Not every complaint that contests the validity of property annexation automatically qualifies as a reverse validation proceeding. Rather, a reverse validation action must be brought as an in rem proceeding, which will bind everyone with an interest in the subject property. (*People ex rel. Gwinn v. Kothari* (2000) 83 Cal.App.4th 759, 765 ["An in rem action or proceeding is one which seeks to affect the interests of all persons ('all the world') in a particular property or thing"].)

Therefore, "[t]he form of the summons and the manner of service are statutorily prescribed. Jurisdiction of 'all interested persons' is had by publishing a summons for the time provided by Government Code section 6063. [Citation.] The summons must contain a notice that written answers to the complaint may be filed 'not later than the date specified in the summons, which date shall be 10 or more days after the completion of publication of the summons.' [Citation.] Jurisdiction 'shall be complete after the date specified in the summons.' [Citation.] In a reverse validation action, if the interested person 'fails to complete the publication . . . and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person.'" (*Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1028.)

C.O.M.E.T.'s initial complaint failed to comply with any of these procedural requirements; that complaint therefore did not initiate a reverse validation action. If C.O.M.E.T. had intended that complaint to commence a

13

reverse validation action, the court would have been required to dismiss it for lack of compliance.

Rather than initiating the required in rem proceeding to adjudicate the validity of property annexation, the relief consistently sought in C.O.M.E.T.'s complaints—including rescission of private agreements, damages, declaratory relief and injunction—involved attempts to invoke in personam jurisdiction: i.e., to impose a personal liability or obligation on the city of Redlands. (See *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1082, citing *Kulko v. California Superior Court* (1978) 436 U.S. 84, 91; see also *Davis v. Fresno Unified School Dist.* (2023) 14 Cal.5th 671, 685 ["the plaintiff cannot obtain injunctive relief against a party to the [reverse validation] action, for such relief would be in personam"].)

A.     *Timeliness of C.O.M.E.T.'s Reverse Validation Claim*

In any event, even if one of C.O.M.E.T.'s complaints had launched a reverse validation action, we would find it was untimely with respect to all of the challenged annexation actions. While it is true that C.O.M.E.T.'s original complaint "attached a copy of an Annexation 'Agreement' . . . dated February 19, 2019 [citation]—just two weeks before the file date," that agreement is unsigned and does not identify any party other than the city of Redlands. The complaint nowhere alleged Redlands actually entered into the attached agreement, nor does it seek relief in connection with it. Instead, the complaint indicates the agreement was attached solely as an exemplar of the terms of Redlands's Annexation Agreements.

C.O.M.E.T. argues that even if it had not yet filed a reverse validation action, it would still be entitled to do so because Redlands's "ongoing annexations are subject to a continuing violation of the law doctrine [citation], which the court dismissed without providing supporting law."

14

But the case C.O.M.E.T. cites as "explain[ing] the continuing violation doctrine" does not support its application here. In *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, relied on by C.O.M.E.T., our Supreme Court explained that the continuing violation doctrine is intended to address the fact that "[s]ome injuries are the product of a series of small harms, any one of which may not be actionable on its own. [Citation.] Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action." (*Id.* at 1197-1198.) The Supreme Court then rejected application of the doctrine in that case because: "The complaint identifies a series of discrete, independently actionable alleged wrongs. Nor is this a case in which a wrongful course of conduct became apparent only through the accumulation of a series of harms." (*Id.* at 1198.)

The same analysis applies to this case. C.O.M.E.T. has challenged a series of property annexations involving separate properties at different times. Because each of those annexations could serve as the factual basis for a discrete cause of action for reverse validation, each of those actions was required to be filed in a timely manner—i.e., within 60 days of its occurrence.

III.

ALLEGED ERROR IN GRANTING SUMMARY JUDGMENT/ADJUDICATION

C.O.M.E.T. contends the court erred in granting summary judgment on its causes of action for "fraud" and "declaratory relief." However, the contention relies significantly on C.O.M.E.T.'s assertion that the court erred in ruling that it had not brought a timely reverse validation action. We have already rejected that claim.

15

And because the validity of property annexations must be tested by way of a reverse validation action, it does not matter what legal theory C.O.M.E.T. relies upon in arguing the annexations are invalid, or what remedy it requests to establish that invalidity. Instead, as explained in *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 467, "the only method of testing the validity of the annexation, whatever the basis for the challenge, was either an action in compliance with the validating statute or a quo warranto proceeding by the Attorney General." (See also *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 846-847 ["[A]s to matters which have been or which could have been adjudicated in a validation action, such matters . . . must be raised within the statutory limitations period in [Code of Civil Procedure] section 860 et seq. or they are waived"].)

The trial court did not err in concluding that C.O.M.E.T.'s failure to timely challenge Redlands's past annexations in a reverse validation action precluded it from relying on a regular cause of action for fraud or declaratory relief to achieve that same determination.

C.O.M.E.T. also challenges the court's finding that Redlands was immune from liability under Government Code section 818.8 (section 818.8), which states: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." C.O.M.E.T. argues that "[b]ecause Redlands is and was deceitful [as defined in Civil Code sections 1710 and 1711] it cannot be 'immune.'" Again, we disagree. As the statute clearly indicates, section 818.8 immunizes "misrepresentation," whether "negligent or intentional." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 800 [misrepresentation under section 818.8 applies only to "interferences

16

with financial or commercial interest[s]" arising out of the common law concept of deceit].)

C.O.M.E.T. also argues that two of the cases relied upon by the trial court to support its immunity ruling, *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 382 (*City of Costa Mesa*), and *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 42-43 (*Masters*), do not support its ruling. Again, we disagree.

*City of Costa Mesa* holds that because the immunity statute applies only to claims for deceit, it does not apply to a claim for reputational harm arising out of misrepresentations made to a third party. (*City of Costa Mesa, supra,* 214 Cal.App4th at p. 383.) That does not undermine its application here. And in *Masters*, the court explained that "Although there is an exception to the immunity provided for public employees for misrepresentation—i.e., actual fraud, corruption or actual malice—there is no such exception stated in the immunity provided to public entities for misrepresentations by their employees." (*Masters, supra*, 32 Cal.App.4th at pp. 42-43.) That supports the application of immunity here, as C.O.M.E.T.'s claims are alleged against Redlands, not any individual employee. C.O.M.E.T has failed to demonstrate the court erred in its immunity ruling.

Because we conclude the trial court's summary judgment ruling was supported by both its finding that C.O.M.E.T. was required to pursue its annexation challenges in a timely reverse validation proceeding and its finding that Redlands was immune from liability based on alleged misrepresentations, we need not reach C.O.M.E.T.'s additional contention that the court improperly evaluated the evidence in concluding that

17

C.O.M.E.T failed to produce evidence to support its factual claims of misrepresentation.

## IV.

### STANDING

Redlands moved for summary judgment based in part on an argument that C.O.M.E.T. lacked standing to pursue the causes of action. Although the court ruled against Redlands on this point, concluding instead that C.O.M.E.T. had "associational" standing, C.O.M.E.T. appeals the issue.

Because C.O.M.E.T. raised the issue, and because "we must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons," (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181), we address the point.

C.O.M.E.T. argues that in addition to "associational" standing, it also had standing to maintain this lawsuit as an "interested person" under Code of Civil Procedure section 863 (section 863). But section 863 applies specifically to reverse validation actions. It does not confer standing to pursue any other type of claim. Because C.O.M.E.T. did not pursue a claim for reverse validation, it fails to establish it has "interested party" standing to pursue the case under section 863.

We also conclude that to the extent this case seeks in personam relief that is not recoverable in a reverse validation action, e.g., injunctions and damages, C.O.M.E.T. also lacks associational standing to maintain those claims.

"Every action must be prosecuted in the name of the real party in interest." (Code Civ. Proc., § 367; *Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1341 ["'[A]

18

plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'"].)

However, "'[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" (*Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 673.) This rule allows an association to pursue a common community or group interest, but as explained in *Friendly Village Community Assn. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 225, an association cannot pursue a claim for damages owed to an individual member.

The trial court erred in its standing analysis when it concluded this case "is actually an annexation action," reasoning that "although C.O.M.E.T. has tried to fashion this as a declaratory relief and fraud action, it is actually little more than a time-barred reverse validation action . . . ." By the time Redlands moved for summary judgment, the court had already sustained the city's demurrer to C.O.M.E.T.'s reverse validation cause of action, without leave to amend. Thus, without regard to C.O.M.E.T.'s intent, this case at that point involved only what was left after the demise of the reverse validation claim; that was an action asserting that Redlands had engaged in a series of misrepresentations to developers of Mentone properties, as a means of securing those developers' compliance with the city's demands. C.O.M.E.T. sought orders rescinding individual annexation agreements entered into between those developers and Redlands, as well as

19

an order which required Redlands to "return[] all . . . overpaid fees paid to the developers or current property owners."

Thus, at the summary judgment stage, the court should have analyzed C.O.M.E.T.'s standing to bring those claims, alleging harm inflicted by Redlands on individual developers and seeking relief from those harms, rather than its standing to maintain a reverse validation action. When we look at the standing issue from that perspective, we conclude the individual property developers are the real parties in interest who must bring those claims. Consequently, the court erred in concluding C.O.M.E.T. had associational standing to do so.

V.

COURT'S ALLEGED FAILURE TO ADDRESS THE ILLEGALITY OF
"PRE" ANNEXATION AGREEMENTS AND DEVELOPMENT IMPACT FEES

C.O.M.E.T. argues the court erred by failing to separately analyze its challenges to pre-annexation agreements, which it now argues were improperly lumped together with the completed annexations claims. But it was C.O.M.E.T. that consistently argued the more recent pre-annexation agreements could be relied upon to extend the statute of limitations for its action seeking reverse validation of the completed annexations—thus implicitly conceding that challenges to either were subject to the reverse validation process. Having made that argument both in the trial court and on appeal, C.O.M.E.T. cannot now change its own legal theory. (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [party cannot change his theory of the case on appeal].)

C.O.M.E.T. also asserts that the trial court's summary judgment ruling did not address the merits of its claim that Redland's development impact fees were unreasonably large. That argument ignores the fact that,

20

through a series of rulings, the court disposed of every cause of action C.O.M.E.T. alleged. Having done so, the court was not obligated to separately analyze the merits of each assertion included within those causes of action.

## DISPOSITION

The judgment is affirmed. Redlands is entitled to recover its costs on appeal.



GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


GOODING, J.